UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| HAROLD SCHULER<br>2191 Pond View Court<br>Reston, VA  20191<br><br>Plaintiff,<br><br>On Behalf of Himself and Other Similarly<br>Situated older employees<br><br>v.<br><br>PRICEWATERHOUSECOOPERS LLP<br>1301 K St., NW<br>Suite 800<br>Washington, D.C.  20005<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:05CV02355 (RJL/DAR) |

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
212-294-6700

Attorneys for Defendant

<u>Table of Contents</u>

<u>Page</u>

Table of Authorities...…………………………………………………………………………ii

Preliminary Statement ............................................................................................... 1

Statement of Facts ...................................................................................................... 5

    A.  Procedural History and Claims Asserted............................................................ 5

    B.  Administrative Prerequisites and Proceedings ..................................................... 6

Argument ..................................................................................................................... 9

    I.  SCHULER'S ADEA CLAIM SHOULD BE DISMISSED FOR
       FAILURE TO SATISFY ADMINISTRATIVE PREREQUISITES ........................... 9

    A.  Administrative Prerequisites to ADEA Suit......................................................... 9

    B.  Commencement of Administrative Proceedings in Deferral States .................. 10

    C.  Worksharing Agreements in Deferral States ...................................................... 17

    D.  Time Limitation for Filing with EEOC ............................................................... 21

    E.  Conclusion ........................................................................................................ 26

    II.  SCHULER'S DCHRA CLAIM IS BARRED
       BY THE STATUTE OF LIMITATIONS ............................................................. 26

Conclusion.................................................................................................................. 29

## TABLE OF AUTHORITIES

### CASES

Anderson v. United States Safe Deposit Co., 552 A.2d 859 (D.C. 1989) ......................27

Banks v. District of Columbia, 377 F. Supp. 2d 85 (D.D.C. 2005) ..................................23

Burkely v. Martin's Super Markets, Inc., 741 F. Supp. 161 (N.D. Ind. 1990)..................13

Burrowes v. Brookdale Hospital and Medical Center, 2002 WL 32096575
        (E.D.N.Y. Mar. 28, 2002) aff'd, 66 Fed. Appx. 229 (2d Cir. 2003).......................25

Chardon v. Hernandez, 454 U.S. 6 (1981) .....................................................................26

Coleman v. Potomac Electric Power Co., 310 F. Supp. 2d 154 (D.D.C. 2004),
        aff'd, 2004 WL 2348144 (D.C. Cir. October 19, 2004) ...................................28-29

Cornett v. AVCO Financial Services, 792 F.2d 447 (4th Cir. 1986) .........................11, 12

DePriest v. Seaway Food Town, Inc., 543 F. Supp. 1355 (E.D. Mich. 1982)...........15, 25

Delaware State College v. Ricks, 449 U.S. 250 (1980) ...................................................26

Echard v. Devine, 726 F. Supp. 1045 (N.D. W. Va. 1989).......................................13, 18

Evans v. Davis Memorial Goodwill Industries, 133 F. Supp. 2d 24 (D.D.C. 2000)......28n.

Fowler v. District of Columbia, 122 F. Supp. 2d 37...............................................19, 19n.

Fowler v. District of Columbia, 404 F. Supp. 2d 206......................................................28

Freeman v. CSX Transportation Co., Inc., 730 F. Supp. 1084 (M.D. Ala. 1989) ...........13

Gibson v. Office of the Architect of the Capitol, No. CIV.A.00-2424 (CKK),
        2002 WL 32713321 (D.D.C. Nov. 19, 2002) .......................................................27

Gorman v. Hughes Danbury Optical Systems, 908 F. Supp. 107
        (D. Conn. 1995) ...........................................................................................18, 24

Hancock v. Bureau of National Affairs, 645 A.2d 588 (D.C. 1994) .................................26

Hidalgo v. Bloomingdale's, 2001 WL 1223448 (S.D.N.Y. Oct. 15, 2001).......................25

Jarmon v. Powell, 208 F. Supp. 2d 21 (D.D.C. 2002)...................................................5-6

Johnson v. PRC, Inc., 1997 WL 411700 (D.C. Cir. 1997)...............................................23

Jones v. Baskin, Flaherty, Elliot and Mannino, P.C., 738 F. Supp. 937
    (W.D. Pa. 1989), aff'd, 897 F.2d 522 (3d Cir. 1990)...........................................13

Jones v. The Executive Office of the President,
    167 F. Supp. 2d 10 (D.D.C. 2001) ..................................................................18n.

Keyse v. California Texas Oil Corp., 590 F.2d 45 (2d Cir. 1978)....................................13

Kocian v. Getty Refining & Marketing Co., 707 F.2d 748 (3d Cir. 1983),
    cert. denied, 469 U.S. 852 (1983).................................................................13, 22

Lyda v. American Broadcasting Companies, Inc., 587 F. Supp. 670
    (S.D.N.Y. 1984)..........................................................................................15-16

Mitchell v. Yates, 402 F. Supp. 2d 222 (D.D.C. 2005) .................................................29n.

Murphy v. PricewaterhouseCoopers, LLP,
    357 F. Supp. 2d 230 (D.D.C. 2004) ..........................1, 2, 3-4, 5-6, 7, 8, 12, 14, 26

National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002) ..............................5

Oscar Mayer & Co. v. Evans, 441 U.S. 750 (1979) ..............................2, 3, 10-11, 16, 22

Petrelle v. Weirton Steel Corp., 953 F.2d 148 (4th Cir. 1991)..................................19, 20

Saunders v. District of Columbia, 2005 WL 3213984 (D.D.C. Oct. 25, 2005)...............17

Sculimbrene v. Reno, 158 F. Supp. 2d 26 (D.D.C. 2001)............................................18n.

Simpkins v. Washington Metropolitan Area Transit Authority,
    132 F.3d 1482, 1997 WL 702349 (D.C. Cir. 1997) ........................................17, 22

Smith v. General Scanning, Inc., 832 F.2d 96 (7th Cir. 1987) ............................11-12, 15

Stephens v. Boise Cascade Corp., 1989 WL 125597 (N.D. Ind. Oct. 3, 1989).............. 14

Stephenson v. American Dental Association, 789 A.2d 1248 (D.C. 2002) ....................26

Sterling v. Contec Corporation LLC, 333 F. Supp. 2d 37 (N.D.N.Y. 2004) ....................20

United States v. Riley, 351 F.3d 1265 (D.C. Cir. 2003) ..............................................18n.

Weiss v. International Brotherhood of Electrical Workers,
    729 F. Supp. 144 (D.D.C. 1990) ........................................................................27

Williams v. Board of Education, 972 F.Supp. 248 (S.D.N.Y. 1997) ................................25

Wilson v. Communications Workers of America,
        767 F. Supp. 304 (D.D.C. 1991) .............................................................17, 18, 27

Zadrozny v. Board of Trustees District No. 508,
        No. 89 C 3701, 1989 WL 134818 (N.D. Ill. Oct. 31, 1989)...................................12

## STATUTES

29 U.S.C. §626(d).....................................................................................9, 11, 21, 25

29 U.S.C. §626(d)(1) ...........................................................................2, 9, 21, 24, 26

29 U.S.C. 626(d)(2) .............................................................................2, 10, 21, 24, 25

29 U.S.C. §633(b)) .....................................2, 3, 9, 10, 11, 14-15, 21, 22, 26

District of Columbia Human Rights Act, D.C. Code §2-1403.04 .....................................10

District of Columbia Human Rights Act,  D.C. Code §2-1403.16 ...................8, 26, 27-28

## REGULATIONS

29 C.F.R. §1601.74 ................................................................................................10

29 C.F.R. §1626.10 ................................................................................................17

## RULES

Fed.R.Civ.P. 12(c) ...................................................................................................1

D.C. Circuit Rule 28(c).............................................................................................18

### Preliminary Statement

Plaintiff, Harold D. Schuler, commenced this action on December 8, 2005 as related to two pending actions in this Court:  Murphy and Schuler v. PricewaterhouseCoopers, LLP, et al., Civil Action No. 02-00982 (RJL/DAR) ("Action I") and Murphy v. PricewaterhouseCoopers, LLP, Civil Action No. 05-01054 (RJL/DAR) ("Action II").  This action, like the two predecessor actions, purports to assert claims of age discriminatory denials of admission as a partner of defendant PricewaterhouseCoopers LLP ("PwC") under the federal Age Discrimination in Employment Act, 29 U.S.C. § 621 et. seq. ("ADEA"), and the District of Columbia Human Rights Act, D.C. Code § 2-1401 et. seq.  ("DCHRA").  Because Schuler has failed to satisfy the administrative prerequisites to the assertion of his claim under the ADEA, and because his claim under the DCHRA is untimely, PwC respectfully submits this motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c).

Schuler purports to complain in this action of his nonpromotion in PwC's July 1, 2004 partner admissions cycle.  In Action I, as commenced in June 2002, Schuler sought to complain of nonpromotion to partner on July 1, 1999, July 1, 2000 and July 1, 2001, and of retaliation.  This Court thereafter granted PwC's motion to dismiss the retaliation claims and the 1999 and 2000 nonpromotion claims under the ADEA, on the ground that those claims were not supported by a timely-filed Equal Employment Opportunity Commission ("EEOC") charge (Murphy v. PricewaterhouseCoopers, LLP, 357 F.Supp. 2d 230, 238-40 (D.D.C. 2004)).

The District of Columbia is a so-called deferral State within the meaning of the ADEA, 29 U.S.C. §633(b). With respect to this action, Schuler's failure to commence proceedings with the District of Columbia Office of Human Rights ("DCOHR") gives rise to two grounds for dismissal of his ADEA claim. As construed by the Supreme Court, the ADEA (29 U.S.C. §633(b)) mandates that administrative proceedings be commenced in a deferral State prior to the commencement of a civil action (Oscar Mayer & Co. v. Evans, 441 U.S. 750, 758 (1979)). Moreover, where no state administrative proceeding is commenced within the 300-day limitation period set forth in 29 U.S.C. 626(d)(2), a grievant is not entitled to the extended 300-day period for the required EEOC filing. Rather, in such a case, the grievant must file a charge of discrimination with the EEOC within 180 days after the occurrence of the alleged discriminatory act, as provided in 29 U.S.C. §626(d)(1).

In contrast to Action I, where Schuler's administrative charge was filed with both the DCOHR and the EEOC, as specifically alleged in the complaint in that action (see Murphy, 357 F.Supp.2d at 236), no proceedings in the DCOHR were commenced by or on behalf of Schuler with respect to the claims asserted in this action, and none are alleged (see Complaint, ¶¶ 44-45). Consequently, Schuler has failed to satisfy the mandate of 29 U.S.C. §633(b). Moreover, Schuler's charge with the EEOC was not filed until February 23, 2005, some 264 days after the occurrence of the nonpromotion in 2004 of which he purports to complain in this action,[1] and was therefore untimely under the applicable 180-day limitation period prescribed in 29 U.S.C. §626(d)(1).

---

[1] The alleged discriminatory employment action occurred on June 4, 2004, when PwC announced new partner admissions to be effective July 1, 2004.

2

Further, equitable considerations quite clearly do not warrant relief from Schuler's failure to comply with the administrative prerequisites to the maintenance of a civil action in this case. In <u>Oscar Mayer</u> -- where the plaintiff had promptly filed a charge of discrimination with the EEOC well within 180 days after his termination, and was expressly misadvised by the EEOC that a state administrative filing was not required under the ADEA (441 U.S. at 754) -- the Supreme Court concluded that it was appropriate for the plaintiff's case to be held in abeyance while he belatedly complied with the mandate of 29 U.S.C. §633(b) (<u>id.</u> at 764-65 & n. 13). Notably, <u>Oscar Mayer</u> did not establish a <u>per se</u> rule warranting such relief; rather, the Court ruled that such procedure was the preferred practice only where equitable considerations warrant, especially where the plaintiff is a lay person, unassisted by trained lawyers.

In sharp contrast to the unrepresented <u>Oscar Mayer</u> plaintiff who had been affirmatively misled by the EEOC, Schuler was represented by experienced legal counsel who made a deliberate decision to commence administrative proceedings by filing a charge of discrimination only with the New York District Office of the EEOC, and expressly indicating on the face of that charge that it should also be filed with the state and local administrative agencies in New York. In so doing, and apparently then contemplating forum shopping to avoid the DCOHR and this Court, Schuler's counsel disregarded the explicit holding of this Court in Action I that the New York statute "does not provide a non-resident plaintiff with a cause of action for discriminatory acts committed by a New York [employer] that occurred outside of New York[,]" unless he alleges "that the actual impact of the discriminatory act was felt in New York" (<u>Murphy</u>,

3

357 F.Supp.2d at 244) (citations omitted) (further noting that "the plaintiffs appear to concede that they have failed to state a claim under [the New York] statute")).

The jurisdictional facts underlying Schuler's claim for nonpromotion in this action have not changed:  Schuler continues to work exclusively in PwC's District of Columbia office and reside in Virginia.  In short, Schuler's failure to commence administrative proceedings in the DCOHR reflects a deliberate, albeit misguided, strategic decision by retained counsel -- circumstances which plainly do not justify equitable relief under the post-Oscar Mayer case law.

Accordingly, Schuler's nonpromotion claim under ADEA for the July 1, 2004 partner admissions cycle should be dismissed for failure to comply with the statutory administrative prerequisites, namely, the commencement of proceedings in the DCOHR, and the filing of a charge with the EEOC within 180 days after the occurrence of the alleged discriminatory act on June 4, 2004.  (See Point I, infra.)

Schuler's supplemental state law claim under the DCHRA fares no better.  To be actionable, a DCHRA cause of action must be commenced within one year after the occurrence of the alleged discriminatory act.  Since this action was not commenced until December 8, 2005, only claims that accrued on or after December 9, 2004 are timely and actionable.  Schuler's nonpromotion claim for the July 1, 2004 partner admissions cycle accrued on June 4, 2004, and should therefore be dismissed as untimely.  While the running of the one-year statute of limitations may be tolled during the pendency of a timely filed administrative complaint with the DCOHR, no such administrative complaint was ever filed by or on behalf of Schuler.  (See Point II, infra.)

4

## Statement of Facts

### A.    Procedural History and Claims Asserted

The Complaint in this action was filed on December 8, 2005, purportedly asserting claims that Schuler was not admitted as a partner of PwC on July 1, 2004 or July 1, 2005 because of his age (Complaint, ¶ 2). The pendency of Action I is noted in the Complaint, which avers that Action I asserts claims that Schuler was not admitted as a partner "in 2000, 2001, 2002 and 2003 on the basis of his age" (id.).[2]

While the Complaint correctly alleges that PwC has an annual partner admissions cycle culminating in the admission of new partners on July 1 of each year (id., ¶ 16), the Complaint alleges incorrectly that Action I asserts claims of nonpromotion for 2002 and 2003 (see id., ¶ 2). The complaint in Action I was filed in this Court on May 20, 2002 (see Docket No. 1), and could not possibly assert claims that had not yet accrued. As a result of this Court's Order and Opinion filed September 27, 2004 in Action I, the only claims that remain pending in that action are Schuler's nonpromotion claims for July 1, 2000 (under the DCHRA only) and July 1, 2001 (see Murphy, 357 F.Supp.2d 230).

As held by this Court, quoting National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002), " ' [e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable "unlawful employment practice" ' for which an administrative charge must be filed" (Murphy, 357 F.Supp.2d at 239, see Jarmon v. Powell, 208 F.Supp.2d 21, 29 (D.D.C. 2002) (holding "each non-promotion

---

[2] For the convenience of the Court, copies of the Complaint and Answer in this action are annexed as Exhibit A and Exhibit B, respectively, to the accompanying Declaration of Eric M. Nelson, Esq., dated February 17, 2006, in support of this motion ("Nelson Decl.").

was . . . a discrete act of discrimination requiring timely pursuit of a remedy").  Schuler did not file an administrative charge or civil action asserting nonpromotion claims for July 1, 2002 or July 1, 2003.  Moreover, as Schuler never filed an administrative charge for nonpromotion on July 1, 2005, there is no basis for an ADEA claim in this action for that partner admissions cycle.

Instead of amending his complaint in Action I, which asserts claims for nonpromotion on July 1, 2000 and July 1, 2001, Schuler commenced this action as a separate "related case" for nonpromotion on July 1, 2004.[3]

### B.    Administrative Prerequisites and Proceedings

In contrast to Action I -- where Schuler's complaint alleged that he filed an administrative charge with the DCOHR, and that the charge was cross-filed with the EEOC (see Murphy, 357 F.Supp.2d at 236) -- Schuler's Complaint in this action alleges only that he filed a charge with the EEOC on February 23, 2005 (Complaint, ¶¶ 44-45).  A copy of the EEOC charge ("the Charge") is annexed to PwC's Answer (Answer, Exh. B), and can otherwise be properly considered on this motion for judgment on the pleadings since it is referenced in the Complaint (see Murphy, 357 F.Supp.2d at 235 n4).

Schuler's counsel, David L. Rose, Esq., transmitted Schuler's Charge to the New York District Office of the EEOC by overnight delivery on February 22, 2005 (see Answer, Exh. B).  In a space near the top of the Charge, Schuler's counsel inserted "New York City (NY) Commission Human Rights, and New York State Div. Human Rights" above the printed language "[State or local Agency, if any]" (id.).  In the section

---

[3] Schuler's co-plaintiff in Action I, C. Westbrook Murphy, commenced Action II in June 2005, asserting essentially the same claims as Schuler asserts in this action.

above Schuler's signature, the Charge states, "I want this Class Action Charge filed with both the EEOC and the State and local Agency, if any" (id.).

The Charge sets forth Schuler's home address in Reston, Va., and provides the address of PwC's New York office (id.). Schuler's Complaint in this action alleges that Schuler "is employed in this District" (Complaint, ¶ 2), and further alleges that "he has been employed in Washington, D.C., by Price Waterhouse and by PwC . . . without interruption since October 1, 1988" (id., ¶ 29).[4] In addition to Schuler's employment in Washington, D.C., the Complaint alleges that venue is appropriate in this district "because PwC has one of its largest offices in this District" (Complaint, id. ¶ 2).

Schuler filed his Charge with the New York District Office of the EEOC, with instructions to cross-file it in the State and local agencies in New York, despite this Court's holding in Action I that the New York Human Rights Law does not provide a non-resident with a cause of action for allegedly discriminatory conduct that occurred outside New York, even by a New York employer (Murphy, 357 F.Supp.2d at 234, 244) (citations omitted). In so holding, the Court noted that Schuler appeared to concede that the New York statute had no application to his claims (id.). Schuler's place of residence in Virginia, and his employment in Washington, D.C., have not changed since his commencement of Action I.

In the concluding sentence of his declaration in support of the Charge, Schuler recognized that proceedings were required to be commenced in the DCOHR by noting that the Charge "should be" cross-filed in the District of Columbia, as well as with the

---

[4] In a declaration in support of his Charge, after stating the address of PwC's New York office (¶ 2), Schuler recites his employment by PwC "since 1988", but omits to state that it was in Washington, D.C. (¶ 3).

State and local agencies in New York (see Answer, Exh. B). Yet, Schuler never filed his Charge with the DCOHR, and the EEOC never did so on his behalf.[5]

Schuler's apparent plan to bypass the DCOHR and this Court, and to commence civil action in the Southern District of New York, was aborted when the New York District Office of the EEOC abruptly dismissed his Charge on April 28, 2005 in light of the pendency of Action I in this Court (see Answer, Exh. C, EEOC Dismissal and Notice of Rights) ("Dismissal Notice"). In the EEOC's "Notice of Suit Rights" set forth in the Dismissal Notice, Schuler was advised that any lawsuit under the ADEA must be filed within 90 days of his receipt of the Dismissal Notice, and expressly cautioned that "[t]he time limit for filing a suit based on a state claim may be different" (id.).

The statute of limitations for asserting a claim under the DCHRA is one year from the occurrence of the alleged discriminatory act (DCHRA, §2-1403.16). As detailed below (Point II, infra), the limitations period begins to run upon the announcement of the alleged discriminatory employment action at issue, not upon its later effective date. The admission of new partners in PwC's July 1, 2004 annual admissions cycle (see Complaint, ¶ 22) was announced to PwC's employees by electronic mail on June 4, 2004 (see Answer, Exh. A).

Notwithstanding the express admonition of the EEOC in its April 28, 2005 Dismissal Notice concerning the limitations period for commencing suit under state law, Schuler did not commence this action within the applicable one-year statute of

---

[5] The Complaint does not allege a filing under State or local law, and does not allege the existence or the terms of any worksharing agreement between the DCOHR and the New York District Office of the EEOC. The DCOHR has a worksharing agreement with the D.C. District Office of the EEOC (see Nelson Decl., Exh. D). But Schuler never filed his Charge with the D.C. District Office of the EEOC, and that worksharing agreement does not, in any event, provide for an automatic cross-filing of EEOC charges with the DCOHR (id.).

limitations, which expired on June 3, 2005. Schuler's Complaint, filed on December 8, 2005, nonetheless alleges that this action is timely filed "by Schuler and PwC's agreement made after issuance of [the Dismissal Notice] to complete mediation efforts before filing suit" (Complaint, ¶ 47). But that tolling agreement, which was signed by PwC's counsel and faxed to Schuler's counsel on July 1, 2005, was entered into after the running of the one-year limitations period specified in the DCHRL (see Nelson Decl., Exh. C).[6]

### Argument

### I.

### SCHULER'S ADEA CLAIM SHOULD BE DISMISSED FOR FAILURE TO SATISFY ADMINISTRATIVE PREREQUISITES

**A.    Administrative Prerequisites to ADEA Suit**

As a prerequisite to the maintenance of a civil action under ADEA, a person claiming to be aggrieved must file a charge of discrimination with the EEOC at least 60 days prior to the commencement of the civil action (29 U.S.C. §626(d)). In addition, such an administrative charge must ordinarily be filed no later than 180 days after the alleged unlawful practice occurred (29 U.S.C. §626(d)(1)). However, where the practice occurred "in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice," and "proceedings have been commenced under the State law" (29 U.S.C. §633(b)), the deadline for filing an EEOC charge is extended to 300 days

---

[6] That agreement was intended to toll the running of the 90-day period to file suit under the ADEA, which, according to Schuler's counsel, would otherwise have expired on August 1, 2005 (id.). The Complaint (¶ 47) thus alleges the tolling agreement in "Claim One" for violation of the ADEA.

after the occurrence of the alleged unlawful practice (29 U.S.C. §626(d)(2)).  By virtue of

the DCHRA, the District of Columbia is a so-called "deferral" State within the meaning of

29 U.S.C. §633(b) (see 29 C.F.R. §1601.74), and a person claiming to be aggrieved by

an alleged unlawful practice occurring in the District of Columbia is therefore required to

commence administrative proceedings with the DCOHR under §2-1403.04 of the

DCHRA, as provided in 29 U.S.C. §633(b).

**B.     Commencement of Administrative Proceedings in Deferral States**

In Oscar Mayer, the Supreme Court squarely held that "resort to administrative

remedies in deferral States by individual claimants is mandatory, not optional" (441 U.S.

at 758).  In so holding, the Court noted that the construction of 29 U.S.C. §633(b) of

ADEA should follow that of the analogous provision of Title VII of the Civil  Rights Act of

1964 since the ADEA provision is "almost *in haec verba*" with the Title VII provision on

which it is based, and the Title VII provision had previously been construed by the Court

to require prior resort to state administrative proceedings in deferral States (id. at 756).[7]

The Court concluded that the common purpose of the two provisions is to "screen from

the federal courts those discrimination complaints that might be settled to the

satisfaction of the grievant in state proceedings" (id.).

The Oscar Mayer Court further held that, for purposes of satisfying 29 U.S.C.

§633(b), the grievant is not required to commence the state proceedings within the time

limits specified by state law (id. at 759).  In this regard, the Court noted that "state

limitations periods cannot govern the efficacy of the federal remedy," and that the

---

[7] Indeed, the Court found "clear and convincing evidence that Congress intended [29 U.S.C. § 633 (b)] to
have the same meaning as § 706(c)" of Title VII (id. at 758).

limitations periods in 29 U.S.C. §626(d) and (e) "adequately protect defendants against stale claims" (id. at 762-763).

The plaintiff in Oscar Mayer had filed a notice with the Department of Labor (predecessor agency to the EEOC under the ADEA) on March 10, 1976, charging that he had been involuntarily terminated in January 1976 because of his age. In response to his inquiry, the Department of Labor erroneously advised the plaintiff that the ADEA did not require the commencement of state law proceedings in order to preserve his federal rights, and he refrained from doing so in reliance on that official advice (441 U.S. at 754). Under these circumstances, the Supreme Court ruled that it would be "preferable" for the lawsuit to be held in abeyance while the plaintiff belatedly commenced administrative proceedings under state law to satisfy 29 U.S.C. §633(b) (Oscar Mayer, 441 U.S. at 764-65 & n13).

The two Circuit Courts of Appeal that have since addressed the issue hold that Oscar Mayer did not thereby establish "a per se rule of entitlement to comparable relief in any case where agency error causes a failure to comply with §633(b)" (Cornett v. AVCO Financial Services, 792 F.2d 447, 449-50 (4th Cir. 1986); Smith v. General Scanning, Inc., 832 F.2d 96, 99-100 (7th Cir. 1987)). The Fourth Circuit concluded that Oscar Mayer "must be read to authorize, though not to compel, comparable extensions of relief when the circumstances warrant," and held that "[w]hether to give the relief must therefore be considered a matter committed to the discretion of the district courts." (Cornett, 792 F.2d at 450). The Seventh Circuit adopted that holding, noting that the Fourth Circuit had "concluded that the district court did not abuse its discretion in declining to keep the plaintiff's federal claim alive by allowing a *nunc pro tunc*

commencement of state proceedings while holding the federal action in abeyance" (Smith 832 F.2d at 100, citing Cornett, 792 F.2d at 450).

The Seventh Circuit thus held that such "relief can be granted when the equities of the circumstances warrant" (Smith, 832 F.2d at 100). The plaintiff in Smith had "never commenced a proceeding with the appropriate State authority as mandated by §633(b)" (id. at 98) (emphasis in opinion), having filed with the agency of the wrong state. The Court of Appeals held that dismissal, rather than a stay, was appropriate, and that Oscar Mayer did not establish a per se rule to the contrary (id. at 100). The Court granted the plaintiff leave to commence a new district court action after refiling a charge with the EEOC and commencing state administrative proceedings, and further held that "[b]ecause more than 300 days have already passed since the occurrence of the alleged discriminatory practice, he must plead and prove the existence of equitable grounds for tolling the filing requirement" (id. at 100; accord Zadrozny v. Board of Trustees District No. 508, No. 89 C 3701, 1989 WL 134818 (N.D. Ill. Oct. 31, 1989)).

In his complaint in this action, Schuler makes no allegation that he commenced administrative proceedings under state law in compliance with the mandate of ADEA §633(b). Although his complaint contains allegations under the heading "Procedural Facts," he alleges that he filed a charge of discrimination only with the EEOC (Complaint, ¶ 45). This stands in contrast to the allegations of Schuler's complaint in Action I, specifically averring that his administrative charge was filed with the DCOHR, as well as the EEOC (see Murphy, 357 F.Supp.2d at 236). Moreover, Schuler could not in good faith allege compliance with §633(b) in this action since, on information and belief, no charge was in fact transmitted to the DCOHR by or on behalf of Schuler.

12

Accordingly, Schuler's ADEA claims must be dismissed unless Schuler can allege and prove equitable grounds warranting the holding of this action in abeyance pending his belated compliance with the administrative prerequisites to the commencement of a civil action under ADEA or the tolling of the ADEA limitations periods. Such grounds were presented in Oscar Mayer, where the plaintiff was not represented by counsel, and refrained from commencing state law proceedings in reliance on misinformation provided by the Department of Labor (EEOC) in response to his inquiry. Conversely, where a plaintiff was represented by counsel at the administrative stage, equitable grounds sufficient to relieve a plaintiff from a failure to timely comply with administrative prerequisites to suit have invariably been found lacking. See, e.g., Burkely v. Martin's Super Markets, Inc., 741 F.Supp. 161, 163-64 (N.D. Ind. 1990); Jones v. Baskin, Flaherty, Elliot and Mannino, P.C., 738 F.Supp. 937, 939-40 (W.D. Pa. 1989), aff'd, 897 F.2d 522 (3d Cir. 1990); Freeman v. CSX Transportation Co., Inc., 730 F.Supp. 1084, 1086-87 (M.D. Ala. 1989); Echard v. Devine, 726 F.Supp. 1045, 1054 (N.D. W. Va. 1989); see also Kocian v. Getty Refining & Marketing Co., 707 F.2d 748, 755 (3d Cir. 1983), cert. denied, 469 U.S. 852 (1983); Keyse v. California Texas Oil Corp., 590 F.2d 45, 47-48 (2d Cir. 1978).

Schuler has been continuously represented by highly qualified and experienced legal counsel since he filed his administrative charge with the DCOHR in Action I in June 2001. Apparently for strategic reasons, Schuler's counsel filed his administrative charge in this case only with the New York District Office of the EEOC, and did so with a request on the face of the charge that it also be filed with State and local administrative agencies in New York (see Answer, Exh. B). This contrasts with Oscar Mayer and other

13

cases where an unrepresented claimant had been affirmatively misled by the EEOC, or otherwise in good faith filed with the wrong state agency (see, e.g., Stephens v. Boise Cascade Corp., 1989 WL 125597 at *2 (N.D. Ind. Oct. 3, 1989) (equitable exception found where the plaintiff attempted to comply with ADEA administrative prerequisites without the benefit of counsel, but filed with the wrong state agency)).

Moreover, in contrast to those cases where an unrepresented plaintiff had been misled by the EEOC into not filing or filing in the wrong state, Schuler's EEOC charge affirmatively requested the New York District Office of the EEOC to file his charge with State and local agencies in New York. And, he made that request despite the holding of this Court in Action I, based on black letter law and without opposition from Schuler, that the New York statute does not reach claims of non-residents, unless "the actual impact of the discriminatory act was felt in New York" (see Murphy, 357 F.Supp.2d at 244) (citations omitted). Schuler continues to reside in Virginia and work in PwC's District of Columbia office. (See Complaint, ¶ 29, alleging that "Schuler has been employed in Washington, D.C. by [PwC and a predecessor firm] in its financial services industry practice without interruption since October 1, 1988.")[8] It could not be alleged now, any more than it could have been alleged in Action I, that Schuler's nonpromotion had any impact whatsoever in New York.

Under the plain language of §633(b), since the New York fair employment agencies had no "authority to grant or seek relief" to Schuler for his nonpromotion in the

---

[8] Schuler also alleges venue is appropriate in this District because, among other things, Schuler is employed in this District (Complaint, ¶ 1). Moreover, Schuler's complaint further alleges that other professional employees in PwC's offices in California, Illinois, Indiana, Massachusetts, New York, Ohio and Pennsylvania, may have claims under the fair employment laws of those states (id., ¶ 57). Schuler's complaint indicates he may move for an order directing that these employees be notified of their purported right to "opt into this case" as plaintiffs under the ADEA (id. p.16, ¶ 1).

District of Columbia, the New York agencies are not deferral agencies with respect to Schuler's claims (29 U.S.C. §633(b)).

In light of this Court's decision in Action I, this case is not unlike the Smith case, where the plaintiff had been notified that his filing in Wisconsin was inappropriate, and the Seventh Circuit dismissed his ADEA complaint (rather than hold the action in abeyance) on the ground that his failure to file with the "appropriate" state authority was not in compliance with the administrative filing procedures mandated by 29 U.S.C. §633(b) (Smith, 832 F.2d at 100). Although there is no allegation here that the EEOC complied with Schuler's request to file in the wrong state (New York), the dispositive fact is that he did not commence proceedings in the DCOHR, the appropriate state authority. Section 633(b) "not only requires that a charging party commence proceedings with a state agency, . . . it requires the party to commence proceedings with a state agency in the right state" (DePriest v. Seaway Food Town, Inc., 543 F.Supp. 1355, 1360 (E.D. Mich. 1982) (citing Oscar Mayer) (failing to file with the agency of the proper state has the same effect as "failure to file at all with an available state agency")).

In Lyda v. American Broadcasting Companies, Inc., 587 F.Supp. 670, 673 (S.D.N.Y. 1984), then Chief Judge Motley found the reasoning of DePriest persuasive. Plaintiff Lyda had filed her charge with the New York District Office of the EEOC, which referred it to the New York State Division of Human Rights (id. at 671). The court concluded that Lyda should have filed in Illinois, "her place of residence, the location of her employer and the location of the alleged discriminatory activity," and that New York had "only tangential connection" to the case (id. at 673). Citing Oscar Mayer, Judge

15

Motley noted that "Lyda's failure to file in Illinois preclude[d] administrative review of her case by the concerned state" (Lyda, 587 F.Supp. at 673, citing Oscar Mayer, 441 U.S. at 756). This, the court reasoned, would defeat the purpose of the state deferral requirement of "allow[ing] states to resolve some claims, thereby screening them from federal court" (id.).

Judge Motley further considered equitable exceptions to dismissal in light of Lyda's failure to commence proceedings in Illinois, and concluded that dismissal was nonetheless appropriate for reasons apposite here. The court found that "[e]xcuse, such as ignorance, seems inapplicable in this case, especially since Lyda has been represented by her current counsel from the start of the litigation" (id.) Moreover, the court found that tolling of the limitation period was not warranted since "the fault for filing in the wrong state rests solely with Lyda" in that neither the EEOC nor her employer had induced her to file her charge in New York (id.).

Having filed his charge with the New York  District Office of the EEOC, expressly requesting that it also be filed with New York local and State administrative agencies, Schuler noted, at the conclusion of his declaration in support of his charge, that it "should be" cross-filed with the human rights agencies of New York State, New York City, and Washington, D.C. (see Answer, Exh. B). While Schuler thus recognized that the commencement of proceedings in the DCOHR was necessary to satisfy the administrative prerequisites to a civil action under ADEA, he never did so. His apparent ploy to avoid this Court and the DCOHR, and commence a civil action in the Southern District of New York, was foiled when the EEOC dismissed his charge on April 28, 2005 in light of the pendency of Action I in this Court (see Answer, Exh. C). Even at that

16

point, Schuler did not see fit to preserve his rights by commencing proceedings in the DCOHR.

**C.    Worksharing Agreements in Deferral States**

Notably, Schuler's complaint does not allege that his charge was referred to the DCOHR by the EEOC under any worksharing agreement.  Under its regulations, the EEOC is authorized to enter into worksharing agreements with deferral state agencies (29 C.F.R. §1626.10), and such agreements may provide for the referral of EEOC charges to state agencies.  Where the EEOC actually refers a charge to the appropriate state agency on a claimant's behalf, the requirements of §633(b) may be satisfied.  But, a plaintiff who relies on an EEOC referral must allege and prove (i) the existence and terms of the worksharing agreement, and (ii) that the charge was in fact referred to the appropriate state agency.

Where a plaintiff fails to allege the existence of an effective worksharing agreement, the courts will not deem an EEOC charge to have been referred to the appropriate state agency (see Saunders v. District of Columbia, 2005 WL 3213984 at *7 (D.D.C. Oct. 25, 2005); Wilson v. Communications Workers of America, 767 F.Supp. 304, 306 n2) (D.D.C. 1991)).  The D.C. Circuit, in an unpublished decision in Simpkins v. Washington Metropolitan Area Transit Authority, 1997 WL 702349 (D.C. Cir. 1997), thus held that the plaintiff had failed to satisfy administrative filing prerequisites where she never filed a complaint with the DCOHR, "nor alleged a worksharing agreement between the DCOHR and the EEOC such that her EEOC filing satisfied the local filing requirements" (id. at *3).[9]

---

[9] While an unpublished opinion of the D.C. Circuit Court of Appeals is "not to be cited as precedent" in that Court (see D.C. Cir. R. 28(c)), the D.C. Circuit has itself cited an unpublished opinion "as some

Moreover, where an applicable worksharing agreement exists, the plaintiff must prove that the charge was actually referred and filed in the appropriate state agency. In Gorman v. Hughes Danbury Optical Systems, 908 F.Supp. 107, 114 (D. Conn. 1995), there was no evidence that the plaintiff's EEOC charge was ever referred to the state agency (the CCHRO). Accordingly, in dismissing the plaintiff's ADEA claim, the court held that "the Supreme Court's approval of the EEOC practice of referring charges to state agencies has no effect in this case where there is no proof that the CCHRO ever had the opportunity to grant or seek relief from the alleged discrimination" (id.) (emphasis supplied).

Similarly in Wilson, this Court noted that, although "the EEOC generally refers claims in the District of Columbia to the [DCOHR], thereby satisfying the state filing requirement," it was "unclear whether the EEOC referred the charge in this case" (767 F.Supp. at 306 n2). The court underscored plaintiff's burden to prove an actual referral in noting that it was "unnecessary to determine the sufficiency of plaintiff's filing in the absence of more concrete evidence regarding referral of the charge" only because the court dismissed the complaint on other grounds (id.); accord Echard v. DeVine, 726 F.Supp. 1045, 1054 n11 (N.D. W. Va. 1989) (holding that the plaintiff's ADEA claim could not be pursued where "[t]here is no indication in the record in this case that plaintiff's claim could have been or ever in fact was forwarded by the EEOC to the West Virginia Human Rights Commission").

---

assurance in the fact that a prior panel in fact ruled the same way on very similar circumstances" (United States v. Riley, 351 F.3d 1265, 1269 (D.C. Cir. 2003)). This Court, on occasion, has similarly relied on an unpublished opinion of the D.C. Circuit (see Jones v. The Executive Office of the President, 167 F.Supp.2d 10, 15 n6 (D.D.C. 2001) ("Given the paucity of precedent available on the present issue, . . . the Court finds the reasoning in [an unpublished opinion] to be particularly instructive"); Sculimbrene v. Reno, 158 F.Supp.2d 26, 31 n3 (D.D.C. 2001) (same)).

Under the express terms of certain worksharing agreements, charges may be deemed to be "automatically" referred to the state agency. Where the plaintiff offers a worksharing agreement between the appropriate state agency and the EEOC, the terms of the agreement must be reviewed and construed to determine whether it provides for an "automatic" cross-filing with the state agency (see Petrelle v. Weirton Steel Corp., 953 F.2d 148, 152 (4th Cir. 1991) (noting that, "[w]hile [plaintiff] may be correct in arguing that a worksharing agreement can be crafted to authorize automatic implementation of the requirements of §633(b), the question remains whether this agreement did that")).

There is no worksharing agreement between the DCOHR and the New York District Office of the EEOC, where Schuler filed his charge. Moreover, the terms of the worksharing agreement between the DCOHR and the Washington, D.C. District Office of the EEOC (the "D.C. Worksharing Agreement") does not provide that the EEOC's receipt of an ADEA charge will be deemed to automatically initiate proceedings in the DCOHR (see Nelson Decl., Exh. D).[10]

The second sentence of paragraph II. A. of the D.C. Worksharing Agreement provides for automatic initiation of DCOHR proceedings only for purposes of Title VII, as follows: "EEOC's receipt of charges on the [DCOHR's] behalf will automatically initiate the proceedings of both the EEOC and the [DCOHR] for the purposes of Section 706(c) and (e)(1) of Title VII" (id.) (emphasis supplied). The plain language of that provision has thus been held to support the notion that a plaintiff in a Title VII action was not required to file a separate claim with the DCOHR (Fowler, 122 F.Supp.2d at 42-43).

---

[10] The worksharing agreement "is a public record of which the court may take judicial notice" (Fowler v. District of Columbia, 122 F.Supp.2d 37, 40 n4 (D.D.C. 2000)).

19

Significantly, however, that same provision has also been held to "offer[ ] no help to plaintiff in proving compliance with the ADEA filing requirements" (Sterling v. Contec Corporation LLC, 333 F.Supp. 2d 37, 39 (N.D.N.Y. 2004) (emphasis supplied)).

The worksharing agreement at issue in Sterling contained another provision, not limited to Title VII charges, providing for automatic dual-filing: "charges that are received by the [New York State Division of Human Rights] . . . will be automatically dual-filed with the EEOC and visa or versa" (id.) (emphasis in opinion) (sic). There is no such provision in the D.C. Worksharing Agreement. Moreover, the provision in the first sentence of paragraph II. A. of the D.C. Worksharing Agreement -- providing that the EEOC and the DCOHR "each designate the other as its agent for the purpose of receiving and drafting charges" -- was construed by the Fourth Circuit in Petrelle as not providing for the commencement of state proceedings (953 F.2d at 152):

> Although the language that "each designates the other as its agent for the purpose of receiving charges" supports the establishment of some agency relationship between the agencies, nowhere does the agreement declare that the EEOC's "receiving charges" commences proceedings before the WVHRC, which is the critical issue under §633(b).

The Petrelle Court therefore held "that under the work sharing agreement between the WVHRC and the EEOC, charges filed solely with the EEOC must be referred to the WVHRC before they commence proceedings before the WVHRC, as required by §633(b)." (id. at 153).

There are even more compelling grounds for construing the language in the D.C. Worksharing Agreement -- that "each designates the other as its agent for the purpose of receiving charges" -- as not providing for the automatic commencement of proceedings in the DCOHR: to construe it otherwise would render superfluous the

20

succeeding sentence of paragraph II. A., which expressly provides for the automatic initiation of DCOHR proceedings only for purposes of Title VII (Nelson Decl., Exh. D, ¶ II. A.).

In sum, Schuler's complaint fails to allege the commencement of proceedings in the DCOHR mandated by §633(b), either by himself or his attorney, or by the EEOC pursuant to a worksharing agreement with the DCOHR. The D.C. Worksharing Agreement is between the DCOHR and the D.C. District Office of the EEOC, and does not in any event provide that an EEOC filing automatically commences proceedings with the DCOHR for the purpose of satisfying §633(b) of the ADEA. In all events, §633(b) requires the actual commencement of proceedings in the DCOHR, and there was no such filing by or on behalf of Schuler with respect to the ADEA claims he seeks to pursue in this action.

### D. Time Limitation for Filing with EEOC

Schuler's failure to commence proceedings in the DCOHR not only warrants dismissal for failure to comply with the mandate of 29 U.S.C. §633(b), as demonstrated above, but also renders untimely under 29 U.S.C. §626(d) his filing with the EEOC on February 23, 2005, some 264 days after the occurrence of his nonpromotion in June 2004. Where a claimant in a deferral state fails to commence proceedings under state law, his EEOC charge must be filed within 180 days of the occurrence of the alleged discriminatory act, as provided in 29 U.S.C. §626 (d)(1). Under such circumstances, the claimant is not entitled to the extended 300-day filing period provided under 29 U.S.C. §626(d)(2).

The issue was thoroughly considered by the Third Circuit in Kocian, which

concluded that where neither the plaintiff nor the EEOC commences proceedings under

state law, the plaintiff is not entitled to the extended 300-day time period under the

parallel provision of Title VII (707 F.2d at 750-52). The Court reasoned that the purpose

underlying the extended 300-day limitations period -- namely, to give state agencies an

opportunity to address employment discrimination complaints, and thereby obviate the

necessity of federal intervention -- is not served where the state agency had no

opportunity to address the claim (id. at 751) ("[t]o allow a Title VII litigant the benefit of

the extended limitations period merely because she fortuitously works in a deferral state

would ignore the plain language of the statute and its legislative purpose")). The

Supreme Court, in holding that prior resort to appropriate state proceedings is required

under 29 U.S.C. §633(b), made clear that the parallel provision of the ADEA was

enacted for precisely the same purpose (Oscar Mayer, 441 U.S. at 756; see Kocian,

707 F.2d at 752 n.6 (noting that a case "arising under the parallel limitations provisions

of the ADEA," where it was assumed that the proceedings were in fact commenced

under state law, was "not to the contrary")).

The holding in Kocian, "that the 300-day limitations period is available to a litigant

in a deferral state only when the EEOC or the litigant has instituted state or local

proceedings" (id. at 752), was cited and followed in the unpublished opinion of the D.C.

Circuit in Simpkins, 132 F.3d 1482, 1997 WL 702349, at *3 (D.C. Cir. 1997)

(unpublished opinion) (holding "that because [the plaintiff] never filed a complaint with

the DCOHR, nor has she alleged a worksharing agreement between the DCOHR and

the EEOC such that her EEOC filing satisfied the local filing requirement, she had only

180 days within which to file charges with the EEOC").[11]  Similarly, in a summary affirmance (without opinion) of the dismissal of a Title VII complaint in <u>Johnson v. PRC, Inc.</u>, No. 96-7189, 95 CV 01660, 1997 WL 411700, *1 (D.C. Cir. 1997), the D.C. Circuit noted that the plaintiff did not file a complaint with the EEOC within the required 180-day period, and "did not initiate an investigation by a state or local agency, which would have extended the filing period to 300 days" (citation omitted).  The D.C. Circuit thereby affirmed an order of this Court, "substantially for the reasons stated therein" (<u>id.</u>), holding that "[s]ince Plaintiff did not initially institute proceedings with a designated state or local agency, such as the District of Columbia Office of Human Rights, the 180-day requirement, rather than the 300-day requirement, applies" (<u>Johnson v. PRC, Inc.</u>, Civil Action No. 95-1660 (GK), Order filed July 19, 1996 (D.D.C. July 18, 1996)).

<u>Kocian</u> was recently discussed and distinguished by Judge Lamberth in <u>Banks v. District of Columbia</u>, 377 F.Supp.2d 85, 90 (D.D.C. 2005), noting that <u>Kocian</u> was a case where the plaintiff had never filed her discrimination charge with the state or local agency:

> Since the employee never filed with the local agency, the employee only had 180 days to file with the EEOC . . . .  If the employee had filed with the local agency, she would have had 300 days to file with the EEOC . . . . <u>Kocian</u> has no holding on when the filing with the local agency needs to take place; <u>Kocian</u> only holds that the employee must file with the local agency to be eligible for the 300 day statute of limitations for filing with the EEOC.

Because the plaintiff in <u>Banks</u> had filed with the local agency in the District of Columbia before filing with the EEOC, Judge Lamberth concluded that <u>Kocian</u> did not apply, and the plaintiff was thus allowed 300 days to file with the EEOC (<u>id.</u> at 91).  On

---

[11]  <u>See</u> note 9, <u>supra</u>.

the other hand, where, as here, there is no allegation or evidence of the commencement of proceedings in the DCOHR, by either the plaintiff or the EEOC, an ADEA complaint will be dismissed if the EEOC charge was not filed within the 180-day period specified in 29 U.S.C.§626(d)(1).

The decision dismissing the plaintiff's ADEA claim in <u>Gorman</u> is instructive. In that case, "the alleged discrimination occurred in Connecticut, a deferral state subject to the provisions of section 626(d)(2)" (908 F.Supp. at 111). The plaintiff never filed her charge with the Connecticut state agency, the "CCHRO." Since she did not file her charge with the EEOC until some 200 days after the occurrence of the alleged discriminatory act, the plaintiff failed to meet the 180-day requirement of 29 U.S.C. §626(d)(1), and thus could not maintain her ADEA claim unless the extended 300-day filing period specified in 29 U.S.C. §626(d)(2) was applicable (<u>id.</u> at 112). Accordingly, the court addressed the issue of "whether the plaintiff's failure to file a claim with the CCHRO prevents her from taking advantage of this extended time frame" (<u>id.</u>).

In granting the defendant's motion to dismiss, the <u>Gorman</u> court rejected the plaintiff's contention "that in a deferral state, like Connecticut, the plaintiff automatically enjoys the benefit of the 300 day filing period without having filed a claim with the CCHRO" (<u>id.</u>). In so ruling, the court noted that "[t]he plain language of both the ADEA and Title VII, requires some state filing for purposes of the extended 300-day EEOC filing period in deferral states" (<u>id.</u>). Because there was no state filing in <u>Gorman</u>, and no evidence that the EEOC had effectuated a CCHRO filing on the plaintiff's behalf, the court concluded that the extended 300-day provision was inapplicable. The court reasoned that a contrary ruling would undermine the recognized purpose of the

24

extended filing period, and concluded that "the Supreme Court's approval of the EEOC practice of referring charges to state agencies has no effect in this case where there is no proof that the CCHRO ever had the opportunity to grant or seek relief from the alleged discrimination" (id. at 114).

Accord Burrowes v. Brookdale Hospital and Medical Center, 2002 WL 32096575 at *2 (E.D.N.Y. Mar. 28, 2002) (dismissing ADEA complaint for failing to timely file charge with EEOC, holding that the extended 300-day filing period is applicable in a deferral state only "if the individual files a claim with the appropriate state agency"), aff'd, 66 Fed. Appx. 229 (2d Cir. 2003); Williams v. Board of Education, 972 F.Supp. 248, 249-50 (S.D.N.Y. 1997) (dismissing complaint under ADEA and Title VII for failure to file with the EEOC within 180 days where there was no timely filing with state agency in deferral state); DePriest, 543 F. Supp. at 1360-62 (dismissing ADEA claim for failure to file EEOC charge within 180 days, holding that plaintiff was not entitled to the benefit of the 300-day filing period where she failed to timely commence proceedings in a deferral state); see Hidalgo v. Bloomingdale's, 2001 WL 1223448 at *5 n3 (S.D.N.Y. Oct. 15, 2001) (ADEA and Title VII extend 180-day EEOC filing period to 300 days only "where a plaintiff has initially instituted proceedings with a State or local agency that has the authority to grant or seek relief from the alleged discriminatory practice").

There having been no commencement of proceedings with the DCOHR by or on behalf of Schuler, his filing with the EEOC 264 days after the occurrence of his nonpromotion in June 2004 was untimely under 29 U.S.C. §626(d).

E.    **Conclusion**

Schuler's ADEA claim should be dismissed on two separate and independent grounds:  (i) failure to commence proceedings in the DCOHR, as mandated by 29 U.S.C. §633(b); and, (ii) failure to timely file his charge with the EEOC, within 180 days of his nonpromotion, as required under 29 U.S.C. §626(d)(1).  Under such circumstances, the Court lacks subject matter jurisdiction over Schuler's ADEA claim (see Murphy, 357 F.Supp.2d at 238-39).

II.

**SCHULER'S DCHRA CLAIM IS BARRED
BY THE STATUTE OF LIMITATIONS**

The DCHRA provides that "[a] private cause of action [based upon an act which would be an unlawful discriminatory practice] shall be filed in a court of competent jurisdiction within one year of the unlawful discriminatory act, or the discovery thereof . . ." (DCHRA, §2-1403.16) (emphasis supplied).

Both the District of Columbia and the federal courts follow the Supreme Court's decisions in Delaware State College v. Ricks, 449 U.S. 250 (1980), and Chardon v. Hernandez, 454 U.S. 6 (1981), in determining when an alleged discriminatory act is deemed to have occurred.  Based on that guidance, the one-year limitation period specified in the DCHRA begins to run when the allegedly discriminatory decision is made and announced, not when it later becomes effective (see Stephenson v. American Dental Association, 789 A.2d 1248 (D.C. 2002); Hancock v. Bureau of National Affairs, 645 A.2d 588 (D.C. 1994)).

The application of this rule in a nonpromotion case is illustrated by <u>Gibson v. Office of the Architect of the Capitol</u>, No. CIV.A.00-2424 (CKK), 2002 WL 32713321 (D.D.C. Nov. 19, 2002)).  In that case, the plaintiff had been made aware of his non-selection for the position at issue on July 21, 1999, while the selectee did not actually begin to work in the position until August 16, 1999 (<u>id.</u> at *2, *4).  Applying the basic rule of <u>Delaware State College</u>, the court concluded that the alleged discriminatory act occurred, and the limitations period began to run, on the notice date, not the later effective date of the promotion (<u>id.</u> at *3-4) (<u>see</u> <u>also</u> <u>Wilson</u>, 767 F.Supp. at 306) (nonpromotion claim accrued when memorandum announcing the promotion of others was issued).

Here, the admission of new partners effective July 1, 2004 was formally announced to all PwC staff on June 4, 2004 (<u>see</u> Answer, Exh. A).  The one-year period of limitations in the DCHRA thus expired on June 3, 2005.  Since Schuler did not file his complaint until December 8, 2005, his DCHRA claim for nonpromotion effective July 1, 2004 is time-barred.

There is no basis for tolling the one-year limitations period in this case.  The DCHRA differs from the ADEA in that the DCHRA "does not require exhaustion of remedies before pursuit of a judicial remedy, but instead 'provides for an <u>ab</u> <u>initio</u> election of remedies'" (<u>Weiss v. International Brotherhood of Electrical Workers</u>, 729 F. Supp. 144, 146 (D.D.C. 1990), citing <u>Anderson v. United States Safe Deposit Co.</u>, 552 A.2d 859, 863 (D.C. 1989)).  A grievant who initially elects to file a complaint with the DCOHR may thereafter file suit only "where the [DCOHR] has dismissed such complaint

on the grounds of administrative convenience, or where the complainant has withdrawn a complaint" (D.C. Code §2-1403.16).

The DCHRA further provides that "[t]he timely filing of a complaint with the [DCOHR]. . . shall toll the running of the statute of limitations while the complaint is pending" (id.). However, since Schuler never filed a complaint with the DCOHR, he cannot avail himself of this tolling provision.

Schuler's complaint alleges that "[t]his case is timely filed by the filing of the EEOC charge and by Schuler and PwC's agreement made after the issuance of a right to sue letter, to complete mediation efforts before filing a suit" (Complaint ¶ 47). The alleged tolling agreement was not entered into until July 1, 2005, after the one-year DCHRA limitations period had expired on June 3, 2005 (see Nelson Decl., Exh. C). That agreement was intended to toll the running of the 90-day notice of right to sue that had been issued by the EEOC on April 28, 2005 (see id.). PwC recognizes that the 90-day right to sue period was thereby tolled, and does not seek dismissal of Schuler's ADEA claim on the ground that it was filed after the expiration of that limitations period.

Notably, the EEOC Dismissal Notice expressly admonished Schuler that "[t]he time for filing suit based on a state claim may be different" (Answer, Exh. C). Schuler failed to heed that warning, and did not assert his DCHRA claim until more than five months after the one-year statute of limitations had run. Schuler's DCHRA claim should accordingly be dismissed as time-barred (see Fowler v. District of Columbia, 404 F.Supp.2d 206, 212 n11 (D.D.C. 2005) (Leon, J.); Coleman v. Potomac Electric Power

28

Co., 310 F.Supp. 2d 154, 160 (D.D.C. 2004), aff'd, 2004 WL 2348144 (D.C. Cir. October 19, 2004)).[12]

## Conclusion

For the reasons stated, it is respectfully submitted that defendant's motion for judgment on the pleadings should be in all respects granted, and the complaint should be dismissed in its entirety.

Dated: February 17, 2006

Respectfully submitted,

WINSTON & STRAWN LLP

/s/ Eric M. Nelson
Eric M. Nelson, Esq. (admitted *pro hac vice*)
Stephen L. Sheinfeld, Esq.
(admitted *pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York  10166
(212) 294-6700
Facsimile (212) 294-4700

Thomas M. Buchanan, Esq. #337907
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C.  20036
(202) 282-5000
Facsimile (202) 282-5100

Counsel for Defendant
PricewaterhouseCoopers LLP

---

[12] Even assuming arguendo that the DCHRA claim was not time-barred, the dismissal of the federal ADEA claim (see Point I, supra) would warrant that this Court decline to exercise supplemental jurisdiction and dismiss the DCHRA claim on that alternative ground (see Mitchell v. Yates, 402 F.Supp.2d 222, 235 (D.D.C. 2005); Evans v. Davis Memorial Goodwill Industries, 133 F.Supp.2d 24, 30 (D.D.C. 2000)).