UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

_____

| | | |
|---|---|---|
| HAROLD D. SCHULER | ) | |
| 2191 Pond View Court | ) | |
| Reston, VA 20191 | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | |
| On Behalf of Himself and Other Similarly | ) | |
| Situated older employees | ) | **COMPLAINT** |
| | ) | **JURY TRIAL** |
| v. | ) | |
| | ) | ADEA Collective Action and |
| PRICEWATERHOUSECOOPERS, LLP | ) | DCHRA Class Action |
| 1301 K St., NW | ) | |
| Suite 800 | ) | |
| Washington, D.C.  20005 | ) | |
| Defendant. | ) | |

_____

**CLASS COMPLAINT FOR RELIEF FROM**
**AGE DISCRIMINATION IN EMPLOYMENT**

1.  Plaintiff Schuler ("Schuler") seeks relief from the refusal of Defendant

PricewaterhouseCoopers, LLP ("PwC" or the "Firm") to consider him for promotion to

partnership and its refusal to promote to partnership him and its other older professional

employees in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621

et seq., and the District of Columbia Human Rights Act (DCHRA), D.C. Code § 2-1401.01 et

seq.  PwC has followed and continues to follow age discriminatory practices by requiring

partners, most of whom are employees, to leave the employment of PwC in the fiscal year in

which they reach age sixty (60).  PwC also disfavors promoting employees to partner once they

are forty-five (45) years old or older.  Instead, it usually promotes to partnership employees under

the age of 45 because PwC wants its partners to serve for twenty (20) years or more before they

leave PwC at age 60.  Schuler sues on behalf of himself and other professional employees over

the age of 45 who have been harmed by PwC's age discriminatory practices. Plaintiff seeks to maintain a collective action under the ADEA and a class action under the DC HRA.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the ADEA claims under Section 7 of the Act, 29 U.S.C. § 626(c), and over the DCHRA claim under 28 U.S.C. §§ 1332, 1367. Venue is appropriate in this District because PwC has one of its largest offices in this District, PwC has held meetings of its Board of Directors in this District, and because Plaintiff is employed in this District, together with many other professional employees over the age of 45. In a prior action filed in this District, Civil No. 02-0982 (RJL/DAR), which is currently pending in this Court, plaintiff Schuler and plaintiff C. Westbrook Murphy challenged PwC's mandatory retirement practice and its refusal to promote them and other senior professional employees to partner in 2000, 2001, 2002 and 2003 on the basis of their age. This action seeks similar relief for PwC's refusal to promote Schuler and other qualified older professional employees on July 1, 2004 and July 1, 2005.

## PARTIES

3. Schuler was born on October 21, 1944. He has been employed by Pricewaterhousecoopers, LLP and Pricewaterhousecoopers, since October 1, 1988. He was promoted to Director in 1991 and to Managing Director in 1994. Upon information and belief, Schuler has the longest service as a Managing Director among the approximately 300 Managing Directors employed by PwC.

4. Defendant PwC was formed on July 1, 1998 as the result of a merger between Price Waterhouse, LLP, and Coopers & Lybrand, LLP. PwC is a nationwide accounting and

professional services firm.  As of August 2003, it employed more than 21,780 individuals in the United States, including thousands of employees in its Washington, D.C. offices.

5.  PwC is an employer as defined by the ADEA,  29 U.S.C. § 630(b) and by the DC HRA. D.C. Code § 2-1401.02(10).

## FACTUAL BACKGROUND

6.  PwC is a limited liability partnership incorporated under the law of Delaware.

7.  PwC is one of the four largest public accounting firms in the United States. PwC had net revenues (excluding revenues from its sale of PwC Consulting in 2002) of $5,350,000,000 for its fiscal year ending June 30, 2004 and $4,627,212,000 for its fiscal year ending June 30, 2003.

8.  PwC has persons it calls "partners" and persons it calls "principals."  Those persons admitted to partnership who are accountants are called "partners."  Those persons admitted to partnership who are not accountants are sometimes called "principals."  Functionally, partners and principals have the same rights and responsibilities, except that principals may not participate in Firm decisions about accounting matters.  Partners and principals together are referred to as "partners" within the Firm for most purposes.  As of August 7, 2003, PwC had 2,073 partners of whom 407 were sometimes called "principals".  Upon information and belief, the number of partners has remained close to that level.  As of November 2005, PwC does not have more than 2,080 partners.

9.  PwC is governed by a Board of Partners and Principals ("Board") which consists of approximately fifteen members, including the Senior Partner who is the Firm's Chief Executive Officer.  The Board, the Firm's Chief Executive Officer, and other officers exercise exclusive

authority over all aspects of Firm management.

10.  The Board and the Senior Partner, together with a few leaders of major practices, control the compensation of partners, the partners' ability to accept new clients, the manner in which partners supervise other employees, other aspects of partners' conduct, the admission of employees to partnership and dismissal from partnership, and interpretation of the Partnership Agreement.

11.  Except for the Senior Partner and fourteen other members of the Board, and a few other officers and management officials, the limited liability "partners" of PwC are not "employers" under the law, but are "employees" within the meaning of the ADEA, 29 U.S.C. § 630(f), and the DCHRA, D.C. Code § 2-1402.11.  Such partners are employees who are protected against age-based discriminatory conduct in promotion to partnership and in other terms and conditions of their employment under both laws. Upon information and belief, at least 2,000 of the Firm's partners are functionally employees and are "employees" rather than employers under the ADEA and the DCHRA.

12.  While they have little authority within the Firm, employees called "partners" at PwC receive much higher incomes and much better retirement benefits than other professional employees, and they are granted greater work-related responsibilities than other professionals within the Firm.  Net revenue per "partner" at PwC is estimated to be $2,609,000 for the fiscal year ending June 30, 2004 and $2,232,133 for the fiscal year ending June 30, 2003.  Such an estimate is necessary because PwC does not publish or make public any information about the income of its partners, or about the average income for its partners.  Similarly PwC has not published or made public information about the income of its retired partners.  On information

4

and belief, Plaintiff alleges that the average income for retired partners of PwC is more than 75% of the partner's most recent average income as an active partner.

13.  Retirement income for employees of PwC has rarely been more than $90,000 a year. Most employees who PwC has promoted to partnership have from nine through fifteen years of service with PwC before they are promoted.  The average length of service for such employees at the time of their promotion to partnership is twelve and a half (12 ½) years.

14.  In addition, PwC accepts for partnership some employees who worked for other employers, who were self-employed, or who were partners in other accounting or consulting firms and were likely to attract clients for PwC.  The Firm admits a small percentage of such persons to partnership each year.  Such persons usually have significant professional experience and are promoted to partnership on the same day they start service.  Some of them cannot be promoted on the day they are first available, but are promoted within a few months of their first day pursuant to an understanding with the Firm.

15.  PwC's process for promotion to partnership usually begins with a Managing Partner recommending promotion of a professional employee to partnership, although any partner may make that recommendation.  Partners familiar with the work and revenue brought in by the employee are asked for recommendations.  Successive levels of PwC management committees and practice leaders review the candidates.   The Human Resources branch of PwC conducts oral "soundings" of other partners until they reach the Admissions Committee appointed by the Board of PwC .

16.  The promotion to partnership process culminates in the Board making the promotions, usually effective on July 1, the first day of the new fiscal year.

## PWC'S POLICIES AND PRACTICES DISCRIMINATE
## AGAINST OLDER EMPLOYEES

17.  The "Partners and Principals Agreement" ("Agreement") is the governing document for members of PwC.  The Agreement requires that each partner's "association with the Firm shall cease at the end of the fiscal year in which he or she attains age 60."  In the Agreement, partners and principals are together called "Individual" or "Individuals."  PwC implements this term of the Agreement by discharging from its employment "partners" when they turn 60 years old.

18.  PwC's policy and practice of requiring such "partners" ("Individuals") to retire at or close to age 60 discriminates against the "partner employees" on the basis of age in violation of the ADEA and the DCHRA by denying them the opportunity to continue their employment with PwC after age 60.

19.  PwC's policy and practice of requiring such "partners" ("Individuals") to retire at or close to age 60 also discriminates against professional employees on the basis of age in violation of the ADEA and the DCHRA by preventing the vast majority of them from being considered for a promotion to partner after they attain age 40.  Their chances of being promoted to partnership decline even more sharply after they attain age 45.

20.  From PwC's creation on July 1, 1998 through September 15, 2003, PwC promoted 1,263 employees to partnership.  Not one person age 59 or above was promoted.  Of the 1,263 employees promoted to partnership, 949, or 75% were under the age of 40.  Eighty-five (85), or 7% were age forty-five (45) through forty-nine (49).  Only twenty-five (25), or less than 2% were over the age of 50.  Only four (4), or about 0.3%, were 55 or older.  Not one of the 29 employees

6

advanced to partner who was 50 or older had more than 6 years of service with PwC.

21.  Of the 77 employees defendant PwC promoted to partnership from July 2, 2002 to and including September 15, 2003, the oldest was born on August 11, 1951, and he was an employee for only five weeks before his promotion.  That partner was hired for a special purpose.  He did not serve for a significant period of time as an employee.  The next oldest employee promoted was born on June 8, 1957 and was 46 years old when promoted.

22.  Effective July 1, 2004, PwC promoted 149 employees to partnership.  Most were under the age of 40.  Upon information and belief, not one of the employees promoted was born before 1950.  Few, if any, of those promoted had served for five years or more and were over the age of 45.

23.  Effective July 1, 2005, PwC promoted 102 additional employees to partnership.  Again, most of the employees who were promoted were under the age of 40.  Upon information and belief, not one of those employees served for five years or more and was over the age of 50.

## SCHULER IS HIGHLY QUALIFIED FOR PARTNERSHIP

24.  Plaintiff Schuler received his undergraduate college degree in 1966 and his master's degree in 1983.  He served in the Peace Corps from 1966 through January 1969.  He was employed by the Office of the Comptroller of the Currency, a part of the Department of Treasury, the agency that regulates and supervises national banks, from 1969 until January 1985.  He was employed as a salary grade 6, and was promoted rapidly and repeatedly until 1974 when he became the Director of the International Division in Washington.  He managed that agency's London office from June 1979 to June 1982.  As Director of the International Division, he attained grade 18, which was the highest level attainable by a career federal employee.  While so

employed, he earned and received a Masters of Public Administration degree from Harvard University in 1983. He served as Director in the Office of the Comptroller until January 1985.

25. From January 1985 until August 1986, Schuler served as the Director, Latin America, for the Institute of International Finance (IFF), an organization formed in the mid-1980's by 140 of the world's largest banks to develop better means of evaluating country risk, and a center for the development of solutions to the global debt crises of the 1980's and early 1990's.

26. From November 1986 through September 30, 1988, Schuler was employed as the Director of Analysis and Supervision of the United States Farm Credit Administration, where he was instrumental in assessing causes and solutions of the bankruptcy of the Farm Credit System, and in devising and proposing solutions to the agriculture and finance committees of the U.S. Senate and House of Representatives. In that position he was a Senior Executive Service Federal Employee, Level 4. That was and is the highest level a federal employee in career service can attain.

27. In 1987, Schuler's former colleague and supervisor at the Office of the Comptroller, Robert Bench ("Bench"), joined Price Waterhouse as a partner. In the summer of 1988, Bench recruited Schuler to work with him as an employee of Price Waterhouse. By memorandum of August 5, 1988 to Managing Partner Tom Macy providing additional information, Bench recited the names and endorsements from the President of one client, and Executive Senior Vice Presidents of one client, and at least three other client Executive Vice Presidents. He noted that two partners of Price Waterhouse "know and . . . and warmly endorse Hal's employment" as did his superior at the Farm Credit Administration. In that memorandum Bench stated:

Hal is partner material in my view.  He is a strong manager, develops staff well and is service oriented . . . he has earned his reputation through dedicated, high quality intellectual and technical work.

28.  In a three page letter signed by Managing Partner Macy dated September 3, 1988, Price Waterhouse proposed that Schuler join its "Financial Services Industry Practice" as a Senior Manager.  Managing Partner Macy was the head of the Financial Services Industry Practice at that time.  A senior manager position at that time was the highest level professional employee below the level of partner and principal.  That letter proposed that he start his employment on September 15, 1988.  In order to give the Farm Credit Administration adequate notice of his intent to leave the government, and with the consent of Price Waterhouse, his start date was delayed by two weeks.  On October 1, 1988, Schuler began his employment by Price Waterhouse in its Financial Services Industry Practice in its Washington, D.C. office as a senior manager.

29.  Schuler has been employed in Washington, D.C. by Price Waterhouse and by PwC in its financial services industry practice without interruption since October 1, 1988.  He worked under the direction of Bench, in the Regulatory Affairs Services ("RAS") part of the banking practice which was a part of the Financial Services Industry Practice until Bench's retirement at age 60 on June 30,  2002.  The Financial Services Industry Practice has been and is a part of a line of service known as Assurance and Business Advisory Services (ABAS).

30.  For many years, Schuler has been the most productive and highest rated employee of the RAS practice and one of the most highly rated and productive employees of the financial industry services practice of PwC and its predecessor Price Waterhouse.  Most recently, he received a 20% bonus for his performance for the fiscal year ending June 30, 2005.

9

31.  Schuler has been and is exceptionally well qualified for promotion to partnership.  In 1998 and 1999 Managing Partner Bench forwarded to PwC's office of Human Resources a form recommending Schuler for admission to partnership in 1999 or 2000.  In that form, Partner Bench stated that :

> Hal [has] sold more than $4mm+ in engagements in the past 15 months.  Hal was the principal architect and a primary deliverer of the $7mm in services . . .  Hal is a brilliant problem-solver, operating on "Chairman's Office" issues at clients . . . He has the multi-dimensional skills, thought leadership, and engagement experiences necessary to be a partner....

32.  During each year from July 1, 1999 to present, PwC has promoted to partnership numerous employees who are younger than Schuler and who have less knowledge and experience and fewer skills and abilities than Schuler.

33.  In October 2004, PwC reactivated the position of "Managing Director" and appointed about 205 professional employees to that position.  In making the 2004 promotions to Managing Director positions,  PwC stated that its selections were made with "very serious rigor" and that those appointed to that position met a "very significant depth of skill, highly significant technical market expertise, recognized expertise, management responsibility" and "the ability to deal with and solve complex business issues."  PwC expects its Managing Directors to perform as partners and, managing directors do perform duties that are performed by partners.  Schuler was selected again for the Managing Director position in October 2004, even though he had held the title pay and benefits of that position since 1994.

34.  Schuler's technical skills, experience, expertise, management skills and abilities, his ability to deal with Presidents and Executive Vice Presidents of clients and potential clients, as well as other partners, and his ability to solve complex business problems are the same kinds of

skills and abilities and other qualifications that PwC uses to determine fitness for promotion to partnership.

35.   A large number of the employees PwC promoted to Managing Director in 2004 were over the age of 40.  Many were older than 45.  On information and belief, most of the employees promoted to the Managing Director position by PwC were put into that position because PwC considered them disqualified for promotion to partnership because they were too old.

36.   Like Senior Managers, Directors and other professional employees, Managing Directors receive less income, and much poorer retirement income and other benefits than do partners.

37.   A high proportion of the number of promotions to partner are made from the position of Senior Manager or the position of Director.   PwC has made few, if any, promotions to partnership from the position of Managing Director.

38.   As of August 7, 2003 PwC employed approximately 1,074 Senior Managers, about 1,200 Directors, and fewer than 20 Managing Directors.  In 2004, an additional 205 persons were promoted to Managing Director.  In 2005, PwC promoted at least another 100 employees to that position.

### SCHULER WAS DENIED PROMOTION TO PARTNERSHIP BECAUSE OF HIS AGE

39.   Despite Managing Partner Robert Bench's recommendation that Schuler be promoted to partner in 1999, PwC did not do so.  In 1999, Bench again recommended that Schuler be promoted to partner in 2000.  PwC did not promote him or consider him for  promotion to partnership in 2000, 2001, 2002, 2003, 2004 or 2005.  PwC did not inform Bench of any reason

11

why his recommendation that Schuler be promoted to partnership was delayed or denied.

40.  PwC did not inform Schuler of any business reason or any other rational basis for its refusal to promote him to partnership or to consider him for partnership.  PwC did not promote Schuler to partner because of his age.

41.  In each of those years, PwC promoted to partnership many younger employees with less experience and fewer skills and abilities than Schuler's experience, skills, and abilities.

42.  PwC prefers to promote to partner those professional employees "who can be partners for twenty years or more" despite the mandatory separation from the Firm at age 60. Managing Partner Timothy Ryan, head of the Banking Practice of PwC, so stated on April 7, 2003, at a meeting in Washington, DC, with the professional staff of Regulatory Advisory Services.  That statement represents PwC's preference and practice in making promotions of employees to partnership.

43.  PwC's age-based preference for promoting younger employees is also expressed in its assignments of younger professional employees to high profile tasks and projects which partners believe may provide a reason for recommending such younger employees to partnership. Such preference in assignments has harmed Schuler and other older professional employees on the basis of their age.

## PROCEDURAL FACTS

44.  On February 23, 2005, Schuler filed with the United States Equal Employment Opportunity Commission ("EEOC" or "Commission") a "Class Action Charge" of age discriminatory practices by PwC against him and other professional employees over the age of

45.  Schuler alleged that in making promotions to partnership, PwC favors employees under the

age of 40, and disfavors him and the class of experienced professional employees age 45 and above.  He also alleged that although PwC has promoted more than 1,500 of its professional employees to partnership through July 1, 2004,  PwC has not promoted one employee over the age of 60 to partnership, and has promoted "few, if any employees over the age of 45 to partnership."

45.   The EEOC designated his charge No. 160-2005-01264 and so notified PwC.  Schuler also promptly notified PwC of the filing of the charge.  PwC has been on notice of the allegations of nation-wide discrimination based upon age since at least March or June 2001, and has been further placed on notice of the class action charge since February 2004.

## CLAIM ONE

### (By Plaintiff Schuler and the Collective Class for Violation of the ADEA)

46.   Paragraphs 1-45  above are hereby incorporated by reference.

47.   By filing a class action charge, Plaintiff Schuler has timely satisfied the prerequisites under the ADEA for filing an opt-in class action suit on behalf of himself and other similarly situated employees over the age of 45.  This case is timely filed by the filing of the EEOC charge and by Schuler and PwC's agreement made after issuance of a right to sue letter, to complete mediation efforts before filing suit.

48.   PwC has discriminated against Schuler and against other professional employees of PwC over the age of 45 by denying them promotions to partnership on the basis of their age. Instead of promoting its most skilled and experienced employees, PwC routinely promotes to partnership those employees who are 40 years old or younger.  PwC's discriminatory promotional practices are guided by an underlying discriminatory policy that requires all partners

to leave their employment with PwC when they attain age 60.

49. PwC discriminates against Schuler and other employees in making the assignments they receive. PwC gives its high profile or other assignments that are likely to lead to promotion to employees who are generally 40 years old or younger to increase their chances of being promoted to partner. Older employees, those over 45, are less likely to receive the prized assignments.

50. PwC has engaged in a pattern and practice of age discrimination in making decisions regarding assignments and promotions in violation of Section 4 of the ADEA, 29 U. S.C. § 623(a).

51. PwC's discriminatory conduct has caused large monetary losses and non-monetary loss to Schuler and to other older professional employees who are members of the class of professional employees over the age of 45. PwC's discriminatory conduct has denied Schuler and other older professional employees who are members of the class income and a share of profits that they would have received if PwC had not denied them equal opportunity for promotion to partnership.

52. PwC's pattern or practice of discriminatory conduct based upon age has caused Schuler and other members of the class frustration, distress, and loss of enjoyment of life.

53. Unless enjoined by order of this Court, PwC will continue its unlawful pattern and practice of age discrimination against its older professional employees.

14

## CLAIM TWO

### (By Plaintiff Schuler and the Class for Violation of the DCHRA)

54. Paragraphs 1-53 are hereby incorporated by reference.

55. Schuler's charge under the DCHRA has met or exceeded the requirements of the DCHRA for making allegations under that Act supporting class certification under Rule 23.

56. PwC has discriminated against Schuler and the class of other professional employees of PwC age 45 and older in favor of its professional employees under the age of 40, in making promotions to partnership, and in making assignments likely to lead to promotions to partnership, in violation of the DCHRA, Sec. 2-1402-11.

57. Many members of the class of older professional employees are employed by PwC in its Washington, D.C. office, and more than 200 such employees have been or are employed there as of November 2005. In addition, Schuler asserts that the fair employment laws of other states, including California, Illinois, Indiana, Massachusetts, New York, Ohio and Pennsylvania, where PwC employs professional employees, are substantially the same as those of the District of Columbia.

58. The members of the class subject to the DCHRA are (1) so numerous that joinder of members as parties in one suit would be impractical; (2) the questions of fact and law to be decided are common to all members of the class; (3) Schuler's claims are typical of the claims of the other members of the class, and (4) Schuler and his counsel will fairly and adequately protect the interests of the class.

15

## PRAYER FOR RELIEF

Wherefore, Plaintiff requests the following relief:

1) an Order directing PwC to provide notice to its professional employees and to its employees called "partners" or "principals" of this suit, and of their right to opt into this case as plaintiffs under the ADEA;

2) an Order under Rule 23 of the Federal Rules of Civil Procedure and the DC Human Rights Act certifying the case as a class action;

3) a Finding by the Jury declaring that PwC has violated the rights of Schuler and other professional employees in the class of experienced older employees age 45 and above by making age a negative factor in the determination of promotions to partnership each year from July 1, 1999 to present;

4) an Award of damages in an amount to be determined by the jury, for each year, commencing on July 1, 1999, and each year thereafter;

5) an Order requiring PwC to revise its partnership agreement and its other age discriminatory policies and practices to eliminate the requirement that its employees who are called partners and principals leave the employment of the Firm at age 60 or any another age;

6) an Injunction to enjoin PwC from engaging in further acts or conduct of age discrimination against its older employees, including its older employees who are called "partners";

7) an Order, based upon the jury finding above, that PwC promote Schuler to partnership promptly, effective on the date he would have been promoted, along with payment of the present value of lost income and other benefits, and promotions for other members of the class who can

show that they were qualified for promotion to partnership;

8)  an Award of liquidated damages in an amount to be determined by the jury;

9)  Compensatory damages under the DC HRA in an amount to be proved at trial;

10)  Punitive damages under the DC HRA in an amount to be proved at trial;

11)  Reasonable costs and expenses of litigation including attorneys' fees and expert

witness fees;

12)  Prejudgment interest on monetary sums awarded to the extent warranted by law; and

13)  Such other relief that is deemed just and appropriate.


## JURY DEMAND

Plaintiff requests trial by jury.

> /s/ David L. Rose
> /s/ Terri N. Marcus
>
> _____
> David L. Rose (DCB # 376379)
> Terri N. Marcus (DCB# 483175)
> Rose & Rose, P. C.
> 1320 19th St. N. W., Suite 601
> Washington DC 20036
> (202) 331-8555
> Attorneys for Plaintiff Schuler and the Class

December 8, 2005