UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| HAROLD SCHULER<br>2191 Pond View Court<br>Reston, VA  20191 | ) ) ) ) | |
| Plaintiff, | ) ) | |
| On Behalf of Himself and Other Similarly<br>Situated older employees | ) ) ) | |
| v. | ) ) ) ) | Case No. 1:05CV02355 (RJL/DAR) |
| PRICEWATERHOUSECOOPERS LLP<br>1301 K St., NW<br>Suite 800<br>Washington, D.C.  20005 | ) ) ) ) ) | |
| Defendant. | ) ) ) | |

**DEFENDANT'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
212-294-6700

Attorneys for Defendant

## TABLE OF CONTENTS

Table of Authorities ................................................................................................................ ii

Preliminary Statement ............................................................................................................ 1

   A.  29 U.S.C. § 633(b) ......................................................................................................... 1

   B.  29 U.S.C. § 626(d) ......................................................................................................... 3

   C.  DCHRA § 2-1403.16(a) ................................................................................................ 4

   D.  Supplemental Jurisdiction ........................................................................................... 4

Argument ................................................................................................................................ 5

   I.  THE DISTRICT OF COLUMBIA, AND NOT NEW YORK, IS THE ONLY
      APPROPRIATE DEFERRAL STATE WITH RESPECT TO SCHULER'S
      ADEA CLAIM ............................................................................................................ 5

   II.  THE 180-DAY LIMITATION SPECIFIED IN 29 U.S.C. § 626(d)(1), AND
       NOT THE EXTENDED 300-DAY PERIOD IN § 626(d)(2), APPLIES TO
       SCHULER'S ADEA CLAIM ..................................................................................... 11

   III.  THE "SINGLE FILING RULE" HAS NO APPLICATION TO SCHULER'S
        CLAIMS ...................................................................................................................... 13

   IV.  SCHULER'S DCHRA CLAIM IS BARRED BY THE STATUTE OF
        LIMITATIONS ........................................................................................................... 15

   V.  IN THE ABSENCE OF A FEDERAL ADEA CLAIM, THIS COURT
       SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION
       OVER SCHULER'S DCHRA CLAIMS ................................................................... 19

Conclusion ............................................................................................................................ 20

## TABLE OF AUTHORITIES

### CASES

Anderson v. Unisys Corp., 47 F.3d 302 (8th Cir. 1995)...................................................14

Anderson v. United States Deposit Co., 552 A.2d 859 (D.C. 1989) .............................................16

Banks v. District of Columbia, 377 F. Supp. 2d 85 (D.D.C. 2005)...................................................12

Burrowes v. Brookdale Hospital and Medical Ctr., 2002 WL 32096575 at 2................................13

Butler v. Matsushita Communication Industrial Corp., 203 F.R.D. 575 (N.D. Ga. 2001) ............14

Campbell v. National Railroad Passenger Corp., 163 F. Supp. 2d 19 (D.D.C. 2001)....................14

Colgan v. Fisher Scientific Co., 935 F.2d 1407 (3rd Cir. 1991)..............................................12, 13

DePriest v. Seaway Food Town, Inc., 543 F. Supp. 1355 (E.D. Mich. 1982)...........................7, 12

Duffy v. Drake Beam Morin, 1998 WL 252063 (S.D.N.Y. May 19, 1998)...............................6, 7

Duggan v. Board of Education of East Chicago Heights, 818 F.2d 1291 (7th Cir. 1987) ..............9

Evans v. Davis Memorial Good Will Industries, 133 F. Supp. 2d 24 (D.D.C. 2000), aff'd,
    1 Fed. Appx. 3 (D.C. Cir. 2001) ...........................................................................................19

Fleming v. United Parcel Service, No. 03 C 9391, 2004 WL 2314962 (N.D. Ill. Oct. 12,
    2004) .......................................................................................................................................14

Gitlitz v. Compagnie Nationale Air France, 129 F.3d 554 (11th Cir. 1997) .................................14

Gorman v. Hughes Danbury Optical Systems, 908 F. Supp. 107 (D. Conn. 1995) ..................9, 13

Hidalgo v. Bloomingdale's, 2001 WL 1223448 (S.D.N.Y. Oct. 15, 2001) ...................................13

Holowecki v. Federal Express Corp., ___ F.3d ___, 2006 WL 555368 (2d Cir. Mar. 8,
    2006) ................................................................................................................................. 14-15

Johnson v. PRC, Inc., 1997 WL 411700 (D.C. Cir. 1997) ............................................................12

Kocian v. Getty Refining & Marketing Co., 707 F.2d 748 (3d Cir. 1983)................................3, 12

Levy v. Roemer, No. 97 Civ. 4016 (MBM), 1998 WL 193191 (S.D.N.Y. Apr. 22, 1998),
    aff'd sub.nom, Levy v. US General Acct'g Office, 175 F.3d 254 (2d Cir. 1999) ..............14

_Lightfoot v. Union Carbide Corp._, No. 92 Civ. 6411, 1994 WL 184670 (S.D.N.Y. May 12, 1994), aff'd, 110 F.3d 898 (2d Cir. 1997) ....................................................................7

_Lucas v. Pathfinder's Personnel, Inc._, 2002 WL 986641 (S.D.N.Y. May 13, 2002) ...................4, 6

_Lyda v. American Broadcasting Companies, Inc._, 587 F. Supp. 670 (S.D.N.Y. 1984) ...... 7, 11-12

_Miller v. Citicorp_, No. 95 Civ. 9728, 1997 WL 96569 (S.D.N.Y. Mar. 4, 1997) ........................ 6-7

_Mitchell v. Yates_, 402 F. Supp. 2d 222 (D.D.C. 2005) ...................................................19

_Mooney v. Aramco Services Co._, 54 F.3d 1207 (5th Cir. 1995) ........................................14

_Murphy v. PricewaterhouseCoopers LLP_, 357 F. Supp. 2d 230 (D.D.C. 2004) ........................2, 6

_O'Neal v. Thompson_, 54 Fed.Appx. 301, 2002 WL 31862689 (10th Cir. Dec. 23, 2002)............14

_Oscar Mayer & Co. v. Evans_, 441 U.S. 750 (1979) .......................................................11

_Petrelle v. Weirton Steel Corp._, 953 F.2d 148 (4th Cir. 1991) ...........................................9

_Sherwood v. Olin Corp._, 772 F. Supp. 1418 (S.D.N.Y. 1991) ..............................................7

_Simpkins v. Washington Metropolitan Area Transit Authority_, 1997 WL 702349 (D.C. Cir. 1997) ..............................................................................................9, 12

_Smith v. General Scanning, Inc._, 832 F.2d 96 (7th Cir. 1987) ..............................................7, 9, 12

_Smith v. HealthSouth Rehabilitation Center of Memphis, Ltd._, 234 F. Supp. 2d 812 (W.D. Tenn. 2002) .........................................................................................14

_Sterling v. Contec Corporation LLC_, 333 F. Supp. 2d 37 (N.D.N.Y. 2004) ..................................10

_Vitikacs v. American Legion_, 2003 WL 22004935 (D.C. Super. June 8, 2003) ..................... 17-18

_Wahlstrom v. Metropolitan-North Commuter Railroad Co._, 89 F. Supp. 2d 506 (S.D.N.Y. 2000) .........................................................................................4, 6

_Weiss v. International Brotherhood of Electrical Workers_, 729 F. Supp. 144 (D.D.C. 1990) ...................................................................................................16

_Williams v. Board of Education_, 972 F. Supp. 248 (S.D.N.Y. 1997).....................................13

_Wilson v. Communication Workers of America_, 767 F. Supp. 304 (D.D.C. 1991)......................18

## STATUTES

29 U.S.C. § 626(d) ........................................................................................................3

29 U.S.C. § 626(d)(1) ...........................................................................................3, 11, 13

29 U.S.C. § 626(d)(2) .......................................................................................... 3, 11-12

29 U.S.C. § 633(b) ...................................................................................... 1, 3, 5, 7-13, 15

DCHRA § 2-1403.16(a) ..................................................................................................4, 16

**Preliminary Statement**

PwC respectfully submits this reply memorandum in further support of its motion for judgment on the pleadings.

**A.    29 U.S.C. § 633(b)**

In opposition to dismissal of his ADEA claims on the ground that no complaint was filed with the appropriate state deferral agency (namely, the DCOHR), Schuler expressly concedes that his "EEOC charge was not cross-filed with the DCOHR" (Schuler Opp. at 20).[1]  Schuler further concedes that his charge was filed "with the New York City field office of the EEOC[,]" and "specified the New York City Commission on Human Rights and the New York State Division of Human Rights as the state or local agencies" (id. at 2).  Schuler does not dispute that his administrative charge cannot be deemed to have been automatically cross-filed with the DCOHR under the terms of the worksharing agreement between that agency and the District of Columbia Field Office of the EEOC (see PwC Mem. at 19-21).[2]

Rather, Schuler asserts that his charge should be deemed filed with the New York State Division of Human Rights ("NYSDHR") pursuant to the terms of a worksharing agreement between that agency and the New York Field Office of the EEOC (Schuler Opp. at 11-12), and that such a filing satisfies the mandate of 29 U.S.C. § 633(b).  The dispositive issue is whether the NYSDHR is an agency that had the

---

[1] "Schuler Opp." refers to Plaintiff's Opposition to Defendant's Motion for Judgment on the Pleadings (Docket No. 12).

[2] "PwC Mem." refers to Defendant's Memorandum of Points and Authorities in Support of Motion for Judgment on the Pleadings (Docket No. 9).

authority "to grant or seek relief from" the allegedly age-based nonpromotion of Schuler, within the meaning of § 633(b).

Schuler's principal contention in opposition to PwC's motion is that the NYSDHR, along with the DCOHR, is an appropriate deferral state agency with respect to his claims.  Schuler seeks to side-step this Court's holding in Action I that, as a non-resident of New York, Schuler has no claim under the New York Human Rights Law ("NYHRL") (see Murphy v. PricewaterhouseCoopers LLP, 357 F.Supp.2d 230, 244 (D.D.C. 2004) (Leon, J.) (citations omitted)), by arguing that "[t]he decision not to promote plaintiff on the basis of his age was made by Defendant's Board in New York City" (Schuler Opp. at 12-13).  But the cases cited by this Court in its decision in Action I squarely and unequivocally hold that the NYHRL has no application to the claims of a non-resident, even where a discriminatory decision is made by the employer's New York office, unless the actual impact of the decision is felt in New York (Lucas v. Pathfinder's Personnel, Inc., 2002 WL 986641 at *2 (S.D.N.Y. May 13, 2002), and Wahlstrom v. Metro-North Commuter Railroad Co., 89 F.Supp.2d 506, 527-28 (S.D.N.Y. 2000) (both cited in Murphy, 357 F.Supp.2d at 244)).

Moreover, apart from its insufficiency as a matter of law (see Point I, infra), Schuler's contention that the decision not to admit him as a partner was made in New York is not supported by the allegations of either his administrative charge or his complaint herein.  Indeed, Schuler's complaint does not even allege a nonpromotion decision; rather, it alleges that PwC "did not . . . consider him for promotion to partnership in 2000, 2001, 2002, 2003, 2004 or 2005" (Complaint, ¶ 39).  Further,  his

charge and complaint can be searched in vain for any allegation that any decision was made in New York, by PwC's Board of Partners and Principals or anyone else.

Schuler does not dispute that he made a deliberate strategic decision, through retained counsel, to bypass the DCOHR by filing with the EEOC in New York and designating the state and local agencies in New York for cross-filing (see PwC Mem. at 3, 13). Moreover, under the circumstances, Schuler does not even argue an equitable basis for relieving him of his failure to satisfy the mandate of 29 U.S.C. § 633(b) (id. at 13-16). Accordingly, Schuler's ADEA claim should be dismissed for failure to comply with that statutory administrative prerequisite to suit (see Point I, infra).

**B.    29 U.S.C. § 626(d)**

With regard to his failure to file with the EEOC within 180 days after notice of his nonpromotion in June 2004, as required by 29 U.S.C. § 626(d)(1), Schuler seeks to avoid the cases holding that the extended 300-day EEOC filing deadline under 29 U.S.C. § 626(d)(2) is not triggered in the absence of a filing with the appropriate state deferral agency. Schuler argues that the Third Circuit decision on this issue in Kocian v. Getty Refining & Marketing Co., 707 F.2d 748, 750-52 (3d Cir. 1983), was "expressly rejected" in a 1991 Third Circuit decision (see Schuler Opp. at 16-17). However, in so arguing, Schuler ignores the fact that the D.C. Circuit followed Kocian and its reasoning in two unpublished decisions in 1997, and that Judge Lamberth recognized the continued viability of Kocian as recently as 2005 (see PwC Mem. at 22-23). Moreover, Schuler fails to acknowledge (much less address) any of the other cases cited by PwC holding that the extended 300-day EEOC filing period is not available to a plaintiff who fails to commence proceedings in the appropriate deferral state (see id. at 24-25).

Schuler's ADEA claim is subject to dismissal on this additional ground arising from his admitted omission to file with the DCOHR (see Point II, infra).

Also unavailing is Schuler's attempt to "piggyback" an EEOC charge filed by a co-employee in reliance on the "single filing rule" recognized in certain Title VII actions. As a matter of law, the single filing rule cannot be invoked by a plaintiff who has filed his own EEOC charge (see Point III, infra.)  Moreover, assuming arguendo the applicability of the single filing rule to an ADEA claim, that rule has never been applied to satisfy a state law charge filing requirement.

**C.    DCHRA § 2-1403.16(a)**

Similarly, there is absolutely no legal basis for Schuler's contention that the one-year statute of limitations under the DCHRA can be tolled by the filing of an administrative complaint by another claimant (see Point IV, infra).  That supplemental state law claim should be dismissed as untimely.

**D.    Supplemental Jurisdiction**

Finally, Schuler recognizes that his ADEA claim for nonpromotion in 2005 is not supported by a timely filed EEOC charge, but asserts that that claim is timely under the DCHRA (Schuler Opp. at 21-22).  Schuler overlooks that, in the absence of a federal ADEA claim, there is no basis for the exercise of supplemental jurisdiction over his DCHRA claim for the same employment action (see Point V, infra,).

4

<u>Argument</u>

I.

**THE DISTRICT OF COLUMBIA, AND NOT NEW YORK,
IS THE ONLY APPROPRIATE DEFERRAL STATE
<u>WITH RESPECT TO SCHULER'S ADEA CLAIM</u>**

A deferral state under 29 U.S.C. § 633(b), by its express terms, is a state which has a fair employment statute establishing or authorizing a state or local agency "to grant or seek relief from [the] discriminatory practice" alleged by the complainant (29 U.S.C. § 633(b)).

Although Schuler admittedly resides in Virginia, and is employed in PwC's District of Columbia office, he contends that the NYHRL is applicable to his nonpromotion claim because "[t]he decision not to promote [him] on the basis of his age was made by [PwC's] Board in New York City" (Schuler Opp. at 13). In the first instance, there is no allegation in his EEOC charge or his complaint in this action that any decision, much less a decision not to promote him, was made in New York. Rather, his complaint alleges that PwC did not "consider him for promotion to partnership" at any time since 1999 (Complaint, ¶39).

Moreover, even assuming arguendo that a decision not to admit Schuler as a partner was in fact made in New York, the NYHRL would nonetheless have no application to Schuler's claim as a matter of law. Schuler notes this Court's holding in Action I that he could not state a claim under the NYHRL, but contends that ruling is inapposite because Schuler is not asserting a claim under the New York statute in this

5

action (Schuler Opp. at 12, citing Murphy, 357 F.Supp.2d at 244). Schuler's contention is directly at odds with the holdings of the cases cited by this Court in Murphy (id.).

Those cases expressly hold that, unless the actual impact of the discriminatory conduct or decision is felt in New York, the New York fair employment statutes have no application to the claims of a non-resident, even where the discriminatory decision is made by the employer in New York (see Lucas, 2002 WL 986641 at *1-2 (the fact that the allegedly discriminatory employment decision was made in New York City or New York State is not sufficient to invoke the NYHRL or the New York City Human Rights Law ("NYCHRL")); Wahlstrom v. Metro North Commuter Railroad Co., 89 F.Supp.2d at 527-28 ("the NYCHRL only applies where the actual impact of the discriminatory conduct or decision is felt within the five boroughs, even if a discriminatory decision is made by an employer's New York City office")).

This fundamental limitation on the application of the New York fair employment statutes is settled beyond challenge. Both Lucas and Wahlstrom cite, among other authorities, Duffy v. Drake Beam Morin, 1998 WL 252063 (S.D.N.Y. May 19, 1998). That case likewise holds that neither the NYHRL nor the NYCHRL has any application to a non-resident plaintiff employed outside of New York, even where the allegedly discriminatory decision was made at the employer's headquarters in New York City (id. at *12-13). Duffy notes that "[t]o hold otherwise would be to expand [the New York statutes] to cover any employee who is fired pursuant to a decision handed down by an employer from its New York City headquarters, no matter where the employee in question actually works" (id. at *12). Duffy, in turn, cites to other cases for this well settled limitation on the reach of the New York statutes (see Miller v. Citicorp, No. 95

6

Civ. 9728, 1997 WL 96569 at *8-9 (S.D.N.Y. Mar. 4, 1997); Lightfoot v. Union Carbide

Corp., No. 92 Civ. 6411, 1994 WL 184670, at *5 (S.D.N.Y. May 12, 1994), aff'd, 110

F.3d 898 (2d Cir. 1997); Sherwood v. Olin Corp., 772 F.Supp. 1418, 1426 (S.D.N.Y.

1991)).

 Duffy concludes with the observation that the plaintiff -- there a New Jersey

resident employed in the defendant's New Jersey branch office -- was not "without a

remedy under state law; he has asserted claims -- which [the defendant] does not

challenge -- under the New Jersey Law Against Discrimination" (id. at *13).  Schuler,

too, has a remedy under state law.  He has asserted a claim under the DCHRA, as he

did in Action I, where he had satisfied the mandate of 29 U.S.C. § 633(b) by

commencing proceedings in the DCOHR.

 Since the NYHRL has no application to his claims, the NYDHR is not an agency

with authority "to grant or seek relief from" his allegedly discriminatory nonpromotion in

this case, within the meaning of 29 U.S.C. § 633(b).

 Schuler does not take issue with the notion that a failure to file with the agency of

the appropriate deferral state has the same effect as a "failure to file at all with an

available state agency" (DePriest v. Seaway Food Town, Inc., 543 F.Supp. 1355, 1360

(E.D. Mich. 1982); Lyda v. American Broadcasting Companies, Inc., 587 F.Supp. 670,

673 (S.D.N.Y. 1984)).  Thus, dismissal of an ADEA claim is warranted where a plaintiff

filed with an agency of the wrong state, and "never commenced a proceeding with the

appropriate state authority as mandated by § 633(b))" (Smith v. General Scanning, Inc.,

832 F.2d 96, 98-100 (7th Cir. 1987) (emphasis in opinion)).

The dispositive fact here is that no proceedings were commenced by or on behalf of Schuler with the DCOHR, the only appropriate § 633(b) state agency with respect to Schuler's ADEA claim.  Schuler recognizes that there is no worksharing agreement between the New York Field Office of the EEOC, where Schuler filed, and the DCOHR, and that his charge was not referred by the EEOC to the DCOHR.  Whether or not Schuler's EEOC charge was actually referred or deemed automatically referred to the NYDHR under the worksharing agreement between that agency and the New York Field Office of the EEOC[3] is irrelevant, as the NYDHR is not an appropriate deferral state agency for Schuler's claim.

Given that his charge was not referred to the DCOHR, Schuler's briefing of what the EEOC was empowered to do or might have done is similarly irrelevant.  We recognize that the EEOC may forward a charge to a state agency pursuant to a worksharing agreement; that an EEOC charge need not be filed with the EEOC district or field office in the state where the discrimination occurred; and, that an EEOC office in one state can transfer a charge to another EEOC office or refer it to an appropriate state agency in another state (see Schuler Opp. at 8-9).  But none of these actions were taken here in light of Schuler's designation of the New York deferral agencies in his EEOC charge, the omission of any allegations in that charge that Schuler was employed in PwC's District of Columbia office, and the absence of any worksharing agreement between the New York Field Office of the EEOC and the DCOHR (see PwC Mem. at 7, 13-14, 19).

---

[3] The provision of the worksharing agreement with the NYDHR on which Schuler relies (see Schuler Opp. at 11-12) is not contained in the worksharing agreement with the DCOHR (see PwC Mem. at 19-21)

Schuler cites <u>Duggan v. Board of Education of East Chicago Heights</u>, 818 F.2d 1291 (7th Cir. 1987), for the proposition that "the EEOC, as a matter of practice, does refer charges of age discrimination to the <u>appropriate</u> state agency" (<u>id.</u> at 1296 n.11) (emphasis supplied) (Schuler Opp. at 10).  But that did not happen here because Schuler's charge, filed with the EEOC in New York, expressly "specified the New York City Commission on Human Rights and the New York State Division of Human Rights as the state of local agencies" (Schuler Opp. at 2).  Nor did it happen in the later Seventh Circuit <u>Smith</u> case, where the plaintiff's ADEA claim was dismissed on the ground that "a proceeding with the <u>appropriate</u> state authority as mandated by § 633(b)" had never been commenced (<u>Smith</u>, 832 F.2d at 98-100).  The plaintiff in <u>Smith</u> had been notified that he had commenced proceedings in the wrong state, just as Schuler was on notice from this Court's decision in Action I that the New York fair employment statute has no application to his claim.

Nor were the plaintiff's charges deemed automatically referred by the EEOC to an appropriate deferral state agency in <u>Petrelle v. Weirton Steel Corp.</u>, 953 F.2d 148 (4th Cir. 1991), or in <u>Simpkins v. Washington Metropolitan Area Transit Authority</u>, 1997 WL 702349 at *3 (D.C. Cir. 1997) (unpublished decision) (affirming dismissal for failure to satisfy administrative filing prerequisites where the plaintiff neither filed a complaint with the DCOHR "nor alleged a worksharing agreement between the DCOHR and the EEOC such that her EEOC filing satisfied the local filing requirement").  Similarly, in <u>Gorman v. Hughes Danbury Optical Systems</u>, 908 F.Supp. 107 (D. Conn. 1995), there was no evidence that the plaintiff's EEOC charge was ever referred to the appropriate state agency (the CCHRO) (<u>id.</u> at 114) ("the Supreme Court's approval of the EEOC

practice of referring charges to state agencies has no effect in this case where there is no proof that the CCHRO ever had the opportunity to grant or seek relief from the alleged discrimination").

Schuler's reliance on Sterling v. Contec Corporation LLC, 333 F.Supp.2d 37, (N.D.N.Y. 2004), is misplaced. The court there held that a provision of the New York Worksharing Agreement, identical to a provision in the D.C. Worksharing Agreement, provided for automatic cross-filing with a state agency only in Title VII cases, and was therefore of "no help to plaintiff in proving compliance with the ADEA filing requirements" (id. at 39). Moreover, the provision for automatic cross-filing in the New York Worksharing Agreement that was not limited to Title VII claims is not included in the D.C. Worksharing Agreement (see PwC Mem. at 19-20). In any event, there is no worksharing agreement between the New York Field Office of the EEOC, where Schuler filed his charge, and the DCOHR.

Schuler does not deny that he was represented by experienced legal counsel who made a deliberate strategic decision to commence administrative proceedings by filing a charge only with the New York Field Office of the EEOC, expressly specifying on the face of that charge that it should be referred to the state and local administrative agencies in New York (see PwC Mem. at 3, 13). Under the circumstances, Schuler understandably does not seek equitable relief from his failure to commence proceedings with the DCOHR, the appropriate deferral state agency in this case (see id. at 12-15).

Schuler's suggestion that 29 U.S.C. § 633(b) should be disregarded as superfluous (see Schuler Opp. at 10) flies in the face of the Supreme Court's holding that "resort to administrative remedies in deferral States by individual claimants is

10

mandatory, not optional" (Oscar Mayer & Co. v. Evans, 441 U.S. 750, 758 (1979).

Moreover, Schuler's arguments that PwC had adequate notice of his claims (Schuler

Opp. at 17-18) is wide of the mark, and overlooks that the purpose of the § 633(b)

deferral provision is to "screen from the federal courts those discrimination complaints

that might be settled to the satisfaction of the grievant in state proceedings" (441 U.S. at

758); see Lyda, 587 F.Supp. at 673 (plaintiff's failure to commence proceedings in the

appropriate deferral state (and to instead file in the NYDHR) "preclude[d] administrative

review of her case by the concerned state" and defeated the purpose of the deferral

state requirement of "allow[ing] states to resolve some claims, thereby screening them

from federal court").

Though it may have been unlikely that the commencement of proceedings with

the DCOHR would have resulted in a settlement of Schuler's claims, Schuler's ADEA

action must nonetheless be dismissed for failure to comply with the mandate of 29

U.S.C. § 633(b).

## II.

### THE 180-DAY LIMITATION SPECIFIED IN 29 U.S.C. § 626(d)(1), AND NOT THE EXTENDED 300-DAY PERIOD IN § 626(d)(2), APPLIES TO SCHULER'S ADEA CLAIM

Schuler recognizes that his EEOC filing on February 23, 2005, some 264 days

after the occurrence of his nonpromotion in June 2004, does not meet the 180-day

limitation set forth in 29 U.S.C. § 626(d)(1).  In opposition to dismissal of his ADEA

claim on this ground, Schuler argues that, if the New York Field Office of the EEOC

complied with his request to cross-file with the New York agencies, he should be

entitled to the benefit of the extended 300-day period specified in 29 U.S.C. § 626(d)(2)

11

(see Schuler Opp. at 15-16). But § 626(d)(2) refers to § 633(b), and presupposes a filing in the appropriate deferral state pursuant to the mandate of that section.

In Kocian v. Getty Refining and Marketing Co., 707 F.2d 748 (3rd Cir. 1983), the Third Circuit held "that the 300-day limitations period is available to a litigant in a deferral state only where the EEOC or the litigant has initiated state or local proceedings" (id. at 752), noting that the underlying purpose of § 633(b) was to give state agencies an opportunity to address the grievance and possibly obviate the necessity of federal intervention (id. at 751). That purpose obviously cannot be served where the plaintiff files in the wrong state (see Smith, supra; Lyda, supra; DePriest, supra). Moreover, Schuler should not be afforded the benefit of the extended 300-day period where he deliberately designated the wrong state agency -- an agency in New York, which, in the language of § 633(b), had no authority "to grant or seek relief from" the nonpromotion in the District of Columbia of which Schuler purports to complain (see Point I, supra).

Schuler suggests that Kocian is no longer good law in the Third Circuit, noting that its application was rejected in Colgan v. Fisher Scientific Co., 935 F.2d 1407, 1414 (3rd Cir. 1991). However, Schuler fails to note that Kocian and its rationale were followed in two more recent unpublished decisions of the D.C. Circuit (Simpkins, 1997 WL 702349 at *3; Johnson v. PRC, Inc., 1997 WL 411700 at *1 (D.C. Cir. 1997); see PwC Mem. at 22-23)). Moreover, Schuler further fails to note that Kocian was cited and discussed as accepted law by Judge Lamberth of this Court as recently as last year in Banks v. District of Columbia, 377 F.Supp.2d 85, 90 (D.D.C. 2005) (see PwC Mem. at 23-24).

Indeed, in placing sole reliance on the 1991 decision of the Third Circuit in Colgan, Schuler also makes no effort to address the extensive discussion and holding in Gorman that the ADEA requires an appropriate state law filing for the plaintiff to be entitled to the benefit of the extended 300-day filing period in deferral states (Gorman 908 F.Supp. at 111-114); (see PwC Mem. at 24-25). Nor does Schuler acknowledge or address three other, and more recent, district court holdings to the same effect (see PwC Mem. at 25, citing Burrowes v. Brookdale Hospital and Medical Ctr., 2002 WL 32096575 at *2 (S.D.N.Y. Mar. 28, 2002); Williams v. Board of Educ., 972 F.Supp. 248, 249-50 (S.D.N.Y. 1997); Hidalgo v. Bloomingdale's, 2001 WL 1223448 at *5 n.3 (S.D.N.Y. Oct. 15, 2001).

It is therefore submitted that Schuler's failure to comply with the mandate of § 633(b) also renders his ADEA complaint subject to dismissal on the additional ground of his failure to timely file his EEOC complaint within 180 days of his nonpromotion, as provided in § 626(d)(1).

## III.

## THE "SINGLE FILING RULE" HAS NO APPLICATION TO SCHULER'S CLAIMS

Apparently recognizing that he is not entitled to the benefit of the extended 300-day EEOC filing period in light of his failure to comply with the mandate of § 633(b), Schuler seeks to "piggyback" the EEOC charge filed by C. Westbrook Murphy, his co-plaintiff in Action I, based on the "single filing rule" (see Schuler Opp. at 18-20). Murphy, unlike Schuler, filed his charge for nonpromotion with the D.C. Field Office of the EEOC, and designated the DCOHR as the state or local deferral agency.

13

In seeking to invoke the single filing rule, applied in certain Title VII cases in this Circuit, Schuler overlooks settled law that the rule has no application in a case where, as here, the plaintiff actually filed an EEOC charge on his own behalf. Each of the Second, Fifth, Eighth, Tenth and Eleventh Circuit Courts of Appeals has so held (Holowecki v. Federal Express Corp., ___ F.3d ____, 2006 WL 555368 at *4 (2d Cir. Mar. 8, 2006); Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1223-24 (5th Cir. 1995); Anderson v. Unisys Corp., 47 F.3d 302, 309 (8th Cir. 1995); O'Neal v. Thompson, 54 Fed.Appx. 301, 2002 WL 31862689, *2 (10th Cir. Dec. 23, 2002); Gitlitz v. Compagnie Nationale Air France, 129 F.3d 554, 558 (11th Cir. 1997)). Moreover, several district courts, including this Court, have reached the same conclusion (Campbell v. National Railroad Passenger Corp., 163 F.Supp.2d 19, 25-26 (D.D.C. 2001); Fleming v. United Parcel Service, No. 03 C 9391, 2004 WL 2314962 at *2 (N.D. Ill. Oct. 12, 2004); Smith v. HealthSouth Rehabilitation Center of Memphis, Ltd., 234 F.Supp.2d 812, 816 (W.D. Tenn. 2002); Butler v. Matsushita Communication Industrial Corp., 203 F.R.D. 575, 583-84 (N.D. Ga. 2001); Levy v. Roemer, No. 97 Civ. 4016 (MBM), 1998 WL 193191 (S.D.N.Y. Apr. 22, 1998), aff'd sub.nom., Levy v. US General Acct'g Office, 175 F.3d 254 (2d Cir. 1999)).

This Court, in a case of first impression in this Circuit, thoroughly considered the issue in Campbell, and held that "a claimant cannot rely upon another claimant's charges for conduct for which she has previously filed an EEOC charge" (163 F.Supp.2d at 26). In so holding, the Court concluded that "[a]llowing such piggybacking would seriously undermine the statute of limitations established for such actions" (id.).

14

Accordingly, having filed his own EEOC charge on February 23, 2005, Schuler cannot piggyback Murphy's EEOC charge filed on March 4, 2005. Schuler nonetheless presses a piggybacking argument, while failing to so much as note this issue, even though his counsel represented the plaintiff in the Holowecki case (and cites to that Second Circuit decision for two non-controversial points in Schuler's opposition memorandum (at 7, 18)). Holowecki, decided on March 8, 2006, is the most recent Circuit Court holding directly on point (2006 WL 555368 at * 4) ("allowing an individual who has previously filed a charge to abandon that charge and piggyback onto the charges of another individual would too often frustrate the EEOC's statutorily-mandated efforts to resolve an individual charge through informal conciliation").

Moreover, to the extent Schuler purports to rely on the single filing rule to satisfy the required deferral state filing requirement of 29 U.S.C. § 633(b), suffice it to note that Schuler cites to no cases or authorities adopting or applying a piggybacking rule under the DCHRA. And there are none.

**IV.**

**SCHULER'S DCHRA CLAIM IS BARRED**
**BY THE STATUTE OF LIMITATIONS**

Schuler recognizes that his DCHRA claim is time-barred. This action was not commenced until December 8, 2005, well over one-year from the occurrence of his nonpromotion in June 2004. Having failed to file his own administrative complaint with the DCOHR, Schuler claims that the one-year statute of limitations applicable to his DCHRA claim should be deemed tolled during the pendency of Murphy's cross-filed DCOHR charge (see Schuler Opp. at 20-21). There is absolutely no support in the DCHRA or elsewhere for that contention.

15

Unlike the ADEA, the DCHRA does not require that a grievant file an administrative charge before filing suit. To the contrary, rather than providing for an exhaustion of administrative remedies, the DCHRA "'provides for an ab initio election of remedies'" (Weiss v. International Brotherhood of Electrical Workers, 729 F.Supp. 144, 146 (D.D.C. 1990), quoting Anderson v. United States Deposit Co., 552 A.2d 859, 863 (D.C. 1989)). The DCHRA thus provides: "Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of competent jurisdiction . . ., unless such person has filed a complaint hereunder; provided that where the [DCOHR] has dismissed such complaint on grounds of administrative convenience, or where the complainant has withdrawn a complaint, such person shall maintain all rights to bring suit as if no complaint had been filed" (DCHRA § 2-1403.16(a) (emphasis supplied)).

That election of remedies provision, on its face, provides for the filing of an administrative complaint or the assertion of a cause of action by one and the same individual complainant or person claiming to be aggrieved. The same section of the DCHRA goes on to provide that "[a] private cause of action . . . shall be filed in a court of competent jurisdiction within one year of the unlawful discriminatory act," and that "[t]he timely filing of a complaint with the [DCOHR] . . . shall toll the running of the statute of limitations while the complaint is pending" (id.). Those provisions, too, plainly contemplate that the filing of an administrative complaint tolling the statute, and the commencement of a subsequent cause of action in court, be by one and the same "person claiming to be aggrieved" (see id.).

16

Hence, while the DCHRA statute of limitations will be tolled during the pendency of an administrative complaint, there is nothing in the DCHRA to suggest that a party's time to file suit under that statute can or may be tolled based on the filing of an administrative claim by another party. If that were the case, the filing of a "class" charge with the DCOHR by one party (e.g., Murphy) would also have to be deemed to bar the assertion of a cause of action by another party within the scope of the class (e.g., Schuler) during the pendency of administrative proceedings commenced by the first party. To the extent Murphy's administrative charge was in fact cross-filed with the DCOHR (there is no evidence that it was), it presumably remains pending (as there is no evidence that it was ever withdrawn or dismissed for administrative convenience), and Schuler's DCHRA claim in this action would then be barred by the election of remedies provision.

The only case cited by Schuler on this point, Vitikacs v. American Legion, 2003 WL 22004935 (D.C. Super. June 8, 2003), is not to the contrary. The issue there was whether the EEOC's referral to the DCOHR of the plaintiff's own administrative complaint tolled the one-year statute of limitations during its pendency. The D.C. Superior Court ruled that a complaint actually cross-filed with the DCOHR by the EEOC is deemed "'filed' with the DCOHR at the time of its transmittal" (Vitikacs, at *2). Since the plaintiff there alleged in his complaint that his administrative complaint had been thereafter withdrawn, his lawsuit was not barred by the election of remedies provision, and the one-year period of limitations was tolled during its pendency (id. at 2-3).

Significantly, the court noted that its "interpretation of the tolling provision also is supported by the apparent intent of the legislature to enable complainants to pursue

17

court action after their administrative complaints have been either withdrawn or dismissed . . ." (id. at *3) (emphasis supplied). The court thus held that "the one-year statute of limitations period . . . was tolled . . . upon the EEOC's 'cross-filing' of [the plaintiff's] administrative complaint with the DCOHR" (id.). Hence, Vitikacs is of no help to Schuler, as he admits that "Schuler's 2005 EEOC charge was not cross-filed with the DCOHR" (Schuler Opp. at 20).

Accordingly, Schuler's sole argument in opposition to dismissal of his DCHRA claim as time-barred -- namely, that the one-year statute of limitations should be deemed tolled for an unspecified period by the cross-filing of Murphy's EEOC charge (Schuler Opp. at 20-21) -- is devoid of merit or legal support.

Elsewhere in his opposition memorandum, Schuler asserts that PwC "provides no proof supporting its allegation that Schuler had notice on June 4, 2004 that he would not be promoted that year" (Schuler Opp. at 6). While Schuler makes no effort to argue the timeliness of his DCHRA claim on the basis of that assertion (see id. at 20-21), Schuler is playing games here. PwC's Answer affirmatively avers "that the admission of new partners effective July 1, 2004 was announced to all employees, including Schuler, on June 4, 2004" (Answer, ¶ 22), and annexes "[c]opies of announcements emailed to employees" (id., Exh. A). Those three announcements constitute "proof" of notice, and Schuler does not deny that he received them on the date they were emailed to him or at any time prior to the July 1, 2004 effective date of the new admissions (see Wilson v. Communication Workers of America, 767 F.Supp. 304, 306 (D.D.C. 1991)

18

(nonpromotion claim accrued when memorandum announcing the promotion of others was issued to staff).[4]

In sum, as the one-year statute of limitations was not tolled, Schuler's DCHRA claim for nonpromotion in 2004 should be dismissed as time-barred.

## V.

## IN THE ABSENCE OF A FEDERAL ADEA CLAIM, THIS COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER SCHULER'S DCHRA CLAIMS

Schuler notes that, while his nonpromotion claim for 2004 may be time-barred under the DCHRA, his "claim under the DCHRA for the 2005 non-promotion is still valid" (Schuler Opp. at 21). Schuler does not contend that his 2005 nonpromotion claim is actionable under the ADEA. Since he "never filed an administrative charge for the nonpromotion on July 1, 2005, there is no basis for an ADEA claim in this action for that partner admissions cycle" (PwC Mem. at 5-6).

The absence of an actionable federal ADEA claim warrants the denial of supplemental jurisdiction over Schuler's state law claim under the DCHRA for the same promotion cycle (see PwC Mem. at 29 n. 12, citing Mitchell v. Yates, 402 F.Supp.2d 222, 235 (D.D.C. 2005); Evans v. Davis Memorial Good Will Industries, 133 F.Supp.2d 24, 30 (D.D.C. 2000), aff'd, 1 Fed. Appx. 3 (D.C. Cir. 2001)). Accordingly, Schuler's supplemental DCHRA claims for nonpromotion in 2004 (even if not time-barred) and in 2005 are subject to dismissal for lack of subject matter jurisdiction.

---

[4] Since Schuler's Complaint alleges that his claims are timely asserted (see PwC Mem. at 28), it is incumbent upon him to aver the date he claims he received the announcement or otherwise was on notice that he would not be admitted as a partner effective July 1, 2004.

**Conclusion**

It is respectfully submitted that PwC's motion for judgment on the pleadings should be granted, and Schuler's complaint should be dismissed in its entirety.

Dated: March 31, 2006

Respectfully submitted,

WINSTON & STRAWN LLP


/s/ Eric M. Nelson
Eric M. Nelson (admitted *pro hac vice*)
Stephen L. Sheinfeld (admitted *pro hac vice*)
Jason S. Aschenbrand
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York  10166
(212) 294-6700

Thomas M. Buchanan # 337907
WINSTON & STRAWN LLP
1400 L Street, N.W.
Washington, D.C.  20005
(202) 371-5700

Counsel for the Defendant