UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HAROLD D. SCHULER,         )
                           )
        Plaintiff,          )
                           )
v.                         )  Civil Case No. 05-2355 (RJL)
                           )
PRICEWATERHOUSECOOPERS, LLP, )
                           )
        Defendant.          )

## MEMORANDUM OPINION
(September 22, 2010) [#41, #44, #45]

Plaintiff, Harold D. Schuler ("Schuler"), filed this lawsuit against his employer, PricewaterhouseCoopers, LLP ("PwC" or "defendant"), alleging a pattern and practice of age discrimination in PwC's promotion policy, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1401.01 *et seq.* Currently pending before the Court are defendant's Motion for Summary Judgment and plaintiff's Motion for a Permanent Injunction or, in the Alternative, for a Preliminary Injunction Pending Trial. Upon review of the pleadings, the entire record, and the applicable law, defendant's motion is GRANTED, and plaintiff's motion is DENIED.

## BACKGROUND

This matter is before the Court on remand from our Circuit Court. Because I have previously summarized the factual background of this matter in an earlier Memorandum Opinion, *see Schuler v. PricewaterhouseCoopers, LLP*, 457 F. Supp. 2d 1 (D.D.C. 2006)

1

("*Schuler I*"), the following short summary will suffice.[1] PwC is an accounting and audit firm with over 20,000 employees and more than 2,000 individuals who are partners or principals. (Def.'s Stmt. ¶ 2.) PwC is organized and exists pursuant to the PwC Partnership and Principals Agreement ("the Partnership Agreement"), which provides that "[a]n Individual's association with the Firm shall cease at the end of the Fiscal Year in which he or she attains age 60." (Def.'s Stmt. ¶ 2; Pl.'s Ex. 1, Art. 10, Sec. 10.1(a).) The term "Individual" is defined as "a person who is either a Partner or a Principal." (Pl.'s Ex. 1, Art. 1.) The sole parties to the Partnership Agreement are the partners and principals of PwC; there is no such mandatory retirement provision for PwC employees. (Def.'s Stmt. ¶ 15.)

Defendant's partnership promotions go into effect on July 1 of each year, (Compl. ¶ 16; Answer ¶ 16), and Schuler, a Managing Director in the Washington, D.C. office, was not among those promoted in either 2004 or 2005. (Compl. ¶¶ 2, 39.) Based on his non-promotions, Schuler filed a charge of discrimination with the New York City District Office of the U.S. Equal Employment Opportunity Commission ("EEOC") on February 23, 2005. (Compl. ¶ 44; Answer Ex. 2 at 4-9; Marcus Decl. Ex. A at 4.) On the charge form, Schuler indicated that his was a "Class Action Charge," that the latest act of

---

[1] Additional factual background can be found in a bevy of prior opinions in two related cases: *Murphy v. PricewaterhouseCoopers, LLP*, No. 02-982 (D.D.C. filed May 20, 2002) and *Murphy v. PricewaterhouseCoopers, LLP*, No. 05-1054 (D.D.C. filed May 26, 2005). Those litigations spawned several opinions by both the District Court and the Circuit Court: *Schuler v. PricewaterhouseCoopers, LLP*, 595 F.3d 370 (D.C. Cir. 2010); *Murphy v. PricewaterhouseCoopers, LLP*, 580 F. Supp. 2d 4 (D.D.C. 2008) (relating to Murphy's claims); *Murphy v. PricewaterhouseCoopers, LLP*, 580 F. Supp. 2d 16 (D.D.C. 2008) (relating to Schuler's claims); *Murphy v. PricewaterhouseCoopers, LLP*, 357 F. Supp. 2d 230 (D.D.C. 2004).

discrimination by defendants took place on "July 1, 2004 or later," and that Schuler wanted the charge filed with the "New York City (N.Y.) Commission Human Rights, and New York State Div. of Human Rights, and EEOC." (Answer Ex. 2 at 4; Marcus Decl. Ex. A at 4.) Schuler also wrote above the signature line on the charge form: "I want this Class Action Charge filed with both the EEOC and the State and local Agency, if any." (Answer Ex. 2 at 4; Marcus Decl. Ex. A at 4.)

On March 14, 2005, Schuler received a letter acknowledging receipt of his charge from the EEOC's New York District Office. (Marcus Decl. Ex. A at 1; *see* Compl. ¶ 45.) On April 28, 2005, the EEOC's New York District Office informed Schuler that the EEOC was dismissing his charge because a case was pending in this Court, ostensibly a reference to a 2002 lawsuit that Schuler filed with a co-plaintiff, C. Westbrook Murphy, against PwC, *Murphy v. PricewaterhouseCoopers, LLP*, No. 02-982 (D.D.C. filed May 20, 2002), that also alleged ADEA and DCHRA violations. (Answer Ex. 3 at 1.) The notice informed Schuler that he could file suit regarding his latest EEOC charge in federal district court within ninety days, a time limit the parties tolled as they attempted to settle the case. *See Schuler v. PricewaterhouseCoopers, LLP*, 514 F.3d 1365, 1369 (D.C. Cir. 2008) ("*Schuler II*"). When negotiations failed, Schuler filed the present action in this Court, asserting that he was "filing an opt-in class action suit on behalf of himself and other similarly situated employees over the age of 45" whom PwC discriminated against "by denying them promotions to partnership on the basis of their age." (Compl. ¶¶ 47-48.)

In *Schuler I*, this Court dismissed Schuler's complaint, holding that plaintiff did

3

not satisfy the ADEA's procedural requirements because he failed to file: (1) his EEOC charge with the D.C. Office of Human Rights; and (2) a new EEOC charge following the company's allegedly unlawful July 2005 promotion denial. *See Schuler I*, 457 F. Supp. 2d at 4-5. I declined to exercise supplemental jurisdiction over the remaining DCHRA claims. *See id.* at 5. On appeal, our Circuit Court reversed, holding that Schuler had "satisfied the ADEA's state filing requirement by virtue of a worksharing agreement between the EEOC and the D.C. Office of Human Rights, as well as through the Commission's referral of his charge to the New York State Division of Human Rights." *Schuler II*, 514 F.3d at 1367. The Circuit Court further held that "because plaintiff seeks damages flowing from the July 2004 ADEA violation alleged in his original EEOC charge through the present, his failure to file a new charge after the July 2005 nonpromotion decision is of no consequence." *Id.* The matter was remanded for this Court to reconsider Schuler's claim as "a class-action pattern or practice ADEA claim arising out of PwC's mandatory retirement and promotion policy" and to decide again whether to exercise supplemental jurisdiction over Schuler's DCHRA claim. *Id.* at 1379-80.

## ANALYSIS

### I.   Standard of Review

Summary judgment is appropriate when the pleadings and the record demonstrate that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact, *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 323 (1986), and the Court draws all reasonable inferences regarding the assertions made in a light favorable to the non-moving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The party opposing a motion for summary judgment, however, "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (internal quotations omitted).

## II. ADEA Pattern and Practice Claim

Plaintiff has filed a Motion for a Permanent Injunction or, in the Alternative, for a Preliminary Injunction Pending Trial, and defendant has filed a Motion for Summary Judgment. In support of plaintiff's motion, which is essentially one for partial summary judgment, Schuler argues that PwC has violated the ADEA by engaging in a pattern and practice of discrimination against him and other employees that he can establish by statistical evidence. Schuler also argues that PwC's partner promotion policy has a disparate impact on Schuler and other employees on the basis of their age in violation of the ADEA. Plaintiff asks the Court to issue a permanent injunction barring PwC from continuing its allegedly discriminatory partner promotion policy or, if the Court finds that Schuler is not entitled to judgment as a matter of law, to issue a preliminary injunction until trial.

In support of its motion, defendant argues that Schuler is seeking to reincarnate claims initially asserted in the lawsuit filed with Murphy in 2002 and dismissed by the Court on cross-motions for summary judgment. Defendant asserts that because this Court held in *Murphy v. PricewaterhouseCoopers, LLP*, 357 F. Supp. 2d 230 (D.D.C.

2004) ("*Murphy*"), that an individual, non-class plaintiff cannot proceed on a pattern and practice ADEA claim as a matter of law, plaintiff's claims in this matter are barred by the doctrine of collateral estoppel. Defendant further asserts that even if Schuler is not barred as a matter of law from pursuing his claims, summary judgment in favor of PwC is still warranted on the undisputed facts.

I agree with PwC that Schuler's ADEA pattern and practice claim is barred by the doctrine of collateral estoppel. In their 2002 lawsuit, Murphy and Schuler asserted an ADEA pattern and practice claim, alleging that PwC had a policy and practice of denying older employees promotion to partner in favor of younger employees, but seeking relief for their specific non-promotions in 1999, 2000, and 2001. (Compl., No. 02-982, ¶¶ 19, 29, 43-45.) The parties filed cross-motions for summary judgment on the pattern and practice claim. I granted PwC's Motion for Summary Judgment, agreeing with PwC that Murphy and Schuler could not proceed on a pattern and practice claim in an individual action for discrimination in violation of the ADEA. *See Murphy*, 357 F. Supp. 2d at 247.

As an initial matter, I found that in the administrative charges underlying *Murphy*, the plaintiffs did not give notice of their intent to proceed as a class action. *Murphy*, 357 F. Supp. 2d at 241. Because notice to PwC was a necessary prerequisite to the viability of any claims, I granted the defendants' motion to dismiss the class allegations of the compliant. *Id.* Then when examining the motions with regard to the pattern and practice claim, I first noted that our Circuit recognizes "an important distinction between the assertion of a 'pattern and practice' claim and the use of statistical or other evidence of systematic discrimination to prove an individual discrimination claim." *Id.* at 246. I also

noted that "where courts in this Circuit have recognized 'pattern and practice'-type claims, the plaintiffs were proceeding on behalf of a class." *Id.* at 247 (citing *Cook v. Boorstin*, 763 F.2d 1462 (D.C. Cir. 1985); *Hyman v. First Union Corp.*, 980 F. Supp. 38 (D.D.C. 1997)). Accordingly, I held that

> in light of this Court's earlier finding that the plaintiffs may not proceed with their class allegations because they failed to adequately allege such claims at the administrative level, it additionally concludes that they are barred from proving their discrimination claims under a 'pattern and practice' theory.

*Id.* Put simply, Murphy and Schuler were barred from pursuing a pattern and practice claim under the ADEA because they had failed to bring it as class action.

Not surprisingly, when Schuler filed his 2005 charge of discrimination that led to the instant action, he indicated that it was a "Class Action Charge." (Answer Ex. 2 at 4; Marcus Decl. Ex. A at 4.) He also titled his Complaint in this action as a "Class Complaint for Relief From Age Discrimination in Employment." (Compl. at 1.) Despite these indications that he intended to proceed on behalf of a class, Schuler has *not* moved for notice of a collective action, and thus no allegedly similarly situated employees have ever opted-in to this case. (*See* Pl.'s Mot. for Leave to File Ex. A at 10 [Dkt. #35] ("Although Plaintiff does not intend to file a motion for collective action at the present time, he reserves the right to do so at a later date.").) Schuler has also chosen *not* to move for class certification on the DCHRA claim, despite his Complaint's averments that the requirements for such certification are met. (*See* Compl. ¶ 58.) In sum, Schuler is pursuing a pattern and practice claim in this case as an individual, non-class plaintiff, just as he and Murphy did in their 2002 lawsuit. It will not work! After all, it doesn't take a

law degree to figure out that you can put a lipstick on a pig, but it's still a pig.

"The Supreme Court has defined issue preclusion to mean that 'once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.'" *Yamaha Corp. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153-54 (1979). The standards for establishing the preclusive effect of a prior holding are: (1) the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case; (2) the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case; and (3) preclusion in the second case must not work a basic unfairness to the party bound by the first determination. *Yamaha*, 961 F.2d at 254.

This case meets all three requirements for finding issue preclusion. The underlying factual allegations in the complaints filed in *Murphy* and *Schuler I* are essentially identical, while seeking relief for non-promotion in different partner admission cycles at PwC. *See Montana*, 440 U.S. at 157-58 (noting that because the complaint in the second case "tracks almost verbatim" the allegations of the prior case and absent any "significant changes in controlling facts or legal principles," the prior

8

resolution was preclusive) (internal quotation marks and citation omitted). Although I did not reach the merits on the pattern and practice theory of recovery in its *Murphy* ruling, I did issue a final judgment on the necessary legal issue of whether an individual, non-class plaintiff may proceed on a pattern and practice theory in an ADEA discrimination case. That holding in *Murphy* rested upon a finding that, as a matter of law, an individual plaintiff cannot pursue a pattern and practice ADEA discrimination claim. *See Murphy*, 357 F. Supp. 2d at 247; *see also Yamaha*, 961 F. 2d at 254 ("[O]nce an *issue* is raised and determined, it is the entire *issue* that is precluded, not just the particular arguments raised in support of it in the first case.") (emphasis in original). It does not appear that the plaintiffs ever appealed this aspect of the *Murphy* ruling, nor has Schuler provided any basis in his briefing following remand in *Schuler II* to reverse this ruling. Nor can it be said that finding Schuler's claim to be estopped works a "basic unfairness" to him, since he is asserting the same claim against the same defendant, with no significant change in facts or law. No subsequent development in the law of our Circuit, or any other Circuit for that matter, has changed the rationale underlying my ruling in *Murphy* that an individual, non-class plaintiff cannot pursue a pattern and practice ADEA claim. *See Murphy*, 357 F. Supp. 2d at 246-47 (citing *Palmer v. Shultz*, 815 F.2d 84, 90-91 (D.C. Cir. 1987); *Williams v. Boorstin*, 663 F.2d 109, 115 n.38 (D.C. Cir. 1980); *Cook v. Boorstin*, 763 F.2d 1462 (D.C. Cir. 1985); *Hyman v. First Union Corp.* 980 F. Supp. 38 (D.D.C. 1997)); *see also id.* at 246 n.13 (discussing the "seminal case" of *Int'l Bhd. Of Teamsters v. United States*, 431 U.S. 324 (1977), which stated that for a class of employees, "proof of the pattern or practice supports an inference that any

particular employment decision, during the period in which the discriminatory policy was in force, was made pursuant to that policy"). [2]

Furthermore, Schuler's reliance on *Davis v. Califano*, 613 F.2d 957 (D.C. Cir. 1979), in his pleadings is misplaced. Schuler argues that *Davis* stands for the proposition that a pattern and practice suit can be pursued by an individual plaintiff in our Circuit. (See Pl.'s Opp'n 6-8.) In fact, *Davis* held that a *prima facie* case in an individual claim of discrimination could be established based on statistical evidence, as it might be in a pattern and practice case. *See Davis*, 613 F.2d at 962 ("We have previously indicated, and now explicitly hold, that statistical evidence may establish a [p]rima facie case of employment discrimination in an individual case."). The *Davis* court did *not* adopt the pattern and practice framework in an individual plaintiff's claim of discrimination; rather, it discusses the use of statistical evidence commonly seen in pattern and practice cases in the context of individual plaintiffs' cases under the familiar *McDonnell-Douglas* burden-

---

[2] The Supreme Court has not spoken directly on this issue and has provided only opaque reference to the difference between an individual's discrimination claim and a class action alleging a pattern or practice of discrimination. *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 876 (1984) ("The crucial difference between an individual's claim of discrimination and a class action alleging a general pattern or practice of discrimination is manifest."). Courts in every other Circuit that has touched on this issue have indicated that an individual plaintiff cannot maintain a pattern and practice claim. *See, e.g., Velez v. Marriott PR Mgt., Inc.*, 590 F. Supp. 2d 235, 243-45 (D.P.R. 2008); *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 711 (2d Cir. 1998); *Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 759-62 (4th Cir. 1998), *vacated on other grounds*, 527 U.S. 1031 (1999); *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 355-56 (5th Cir. 2001); *Bacon v. Honda*, 370 F.3d 565, 575 (6th Cir. 2004); *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 866 n.6 (7th Cir. 1985); *Craik v. Minnesota State Uni.*, 731 F.2d 465, 469-70 (8th Cir. 1984); *Mansourian v. Bd. of Regents*, No. CIV. 2-03-02591-FCD-EFB, 2007 WL 3046034, *7-*8 (E.D. Cal. Oct. 18, 2007), *rev'd on other grounds*, 594 F.3d 1095 (9th Cir. 2010), *amended on other grounds*, 602 F.3d 957 (9th Cir. 2010); *Semsroth v. City of Wichita*, 304 F. App'x. 707, 715-17 (10th Cir. 2008); *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 967-69 (11th Cir. 2008).

shifting framework. *See id.* at 962-63. In addition, *Murphy* explicitly discusses *Davis* and the fact that "the D.C. Circuit has held that statistical evidence[] may establish a *prima facie* case of discrimination in an individual action." *Murphy*, 357 F. Supp. 2d at 247 (citing *Davis*, 613 F.2d at 962). Schuler's attempt to conflate the type of *evidence* an individual may use in a discrimination case and the type of *claim* that an individual may bring is disingenuous, at best.[3]

Schuler also attempts to distinguish his pattern and practice claim from prior case law by arguing that "collective actions" brought under the ADEA should be treated differently from "class actions" brought under Title VII because the former involve an "opt-in" class rather than the latter's "opt-out" class. This too must fail. First, Schuler himself styled the charge filed with the EEOC as a "class action charge," (*see* Answer Ex. 2 at 4), and the Complaint filed in this case as a "class complaint," (*see* Compl. at 1). Our Circuit Court similarly described Schuler's complaint as a "class-action complaint," *Schuler II*, 514 F.3d at 1367, specifically described his federal claim as a "class-action pattern or practice ADEA claim," *id.* at 1379, and described his EEOC charge as a "class-action charge," *id.* at 1369. Second, my holding in *Murphy* that an individual, non-class plaintiff cannot proceed on a pattern and practice basis was limited to the ADEA context.

---

[3] Similarly, plaintiff's reliance on *Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095 (10th Cir. 2001), is misplaced. (Pl.'s Mot. 8.) Schuler claims that the Tenth Circuit, in *Thiessen*, "held that a class action does not need to be certified for the pattern-or-practice theory to apply." (*Id.* at 8.) In actuality, *Thiessen* concerned not whether individuals can pursue pattern and practice claims but the appropriate process of certifying a class for a pattern and practice claim:
> We do not hold that whenever there is evidence of a pattern-or-practice, a class must be certified. Whether certification or decertification is appropriate depends upon application of the factors we have identified in the ad hoc approach.

*Thiessen*, 267 F.3d at 1108.

And unlike in *Murphy*, Schuler has admittedly chosen not to take the essential first step of moving for notice to potential class members in the present case, and thus no allegedly similarly situated employees ever opted-in to a class for this case. (*See* Pl.'s Mot. for Leave to File Ex. A at 10 [Dkt. #35].) Thus, any purported differences between class and collective actions are irrelevant because there simply is *no* class of plaintiffs in this case. The bottom line is clear: Schuler is proceeding as an individual, non-class plaintiff, and as such, he cannot pursue his "pattern and practice" claim as a matter of law.[4]

### III. DCHRA Claim

Finally, the Complaint also alleges that defendant violated certain provisions of the DCHRA. A federal district court may exercise supplemental jurisdiction over a plaintiff's state law claims if they are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). The decision to exercise supplemental jurisdiction, however, is discretionary. *Osborn v. Haley*, 549 U.S. 225, 245 (2007). When deciding whether or not to exercise supplemental jurisdiction, a court is to consider judicial economy, convenience, fairness, and comity. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

In this case, the Court's original jurisdiction is over Schuler's ADEA claim. Considering that the Court has granted defendant's Motion for Summary Judgment and dismissed Schuler's ADEA claim, it would not be in keeping with judicial economy or

---

[4] Moreover, Schuler's attempt to generate a disparate impact claim at this late stage is unavailing. *See* Pl.'s Mot. at 28-32. Nowhere in Schuler's complaint or his EEOC charge has Schuler challenged any facially neutral policy that purportedly adversely affects older employees. Schuler has simply not raised any claims of disparate impact that he can now rely on to survive defendant's Motion for Summary Judgment.

comity to maintain jurisdiction over the remaining state law claim. *See id.* Therefore, I decline to exercise supplemental jurisdiction over Schuler's DCHRA claim.

## CONCLUSION

For all of the foregoing reasons, defendant's Motion for Summary Judgment is GRANTED, and plaintiff's Motion for a Permanent Injunction, in the Alternative, for a Preliminary Injunction Pending Trial is DENIED. Furthermore, plaintiff's DCHRA claims for 2004 and 2005 are dismissed without prejudice pursuant to U.S.C. § 1367(c)(3). An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge